## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| MASONS & PLASTERERS WELFARE FUND, LOCAL 56, DUPAGE COUNTY, ILLINOIS, | ) ) ) ) | |
| and | ) ) | |
| MASONS & PLASTERERS PENSION FUND, LOCAL 56, DUPAGE COUNTY, ILLINOIS, | ) ) ) | |
| and | ) ) | |
| RICHARD RASMUSSEN, RICHARD LAUBER, RICHARD PORTER, DAVID SABO, TIMOTHY AIKENS, and MICHAEL HOOPER, as Trustees of the Masons & Plasterers Welfare Fund, Local 56, DuPage County, Illinois, | ) ) ) ) ) ) ) | Case No.: 08 CV 2873  Judge Kendall |
| and | ) ) | |
| MICHAEL ALORE, TIMOTHY AIKENS, LARS ESPELAND, STEVEN NELMS, RICHARD LAUBER, RICHARD PORTER, and DAVID SABO, as Trustees of the Masons & Plasterers Pension Fund, Local 56, DuPage County, Illinois, | ) ) ) ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | |
| D.J.M. CONSTRUCTION, Inc., an Illinois Corporation, | ) ) ) | |
| Defendant. | ) | |

## PLAINTIFFS' AMENDED COMPLAINT
## UNDER 29 U.S.C. §1132(a) AND 29 U.S.C. §1145

Plaintiffs, MASONS & PLASTERERS WELFARE FUND, LOCAL 56, DUPAGE

COUNTY, ILLINOIS (the "Welfare Fund"); MASONS & PLASTERERS PENSION FUND,

LOCAL 56, DUPAGE COUNTY, ILLINOIS (the "Pension Fund"); RICHARD RASMUSSEN,

RICHARD LAUBER, RICHARD PORTER, DAVID SABO, TIMOTHY AIKENS, and

MICHAEL HOOPER, as Trustees of the Masons & Plasterers Welfare Fund, Local 56, DuPage

County, Illinois (the "Welfare Fund Trustees"); and MICHAEL ALORE, TIMOTHY AIKENS,

LARS ESPELAND, STEVEN NELMS, RICHARD LAUBER, RICHARD PORTER, and

DAVID SABO, as Trustees of the Masons & Plasterers Pension Fund, Local 56, DuPage

County, Illinois (the "Pension Fund Trustees"); by and through their attorneys, Pedersen &

Houpt, hereby complain of Defendant D.J.M. Construction, Inc., as follows:

## Parties

1.      The Welfare Fund is a trust established pursuant to a certain Agreement and

Declaration of Trust ("Trust Agreement") entered into by and between the Bricklayers, Masons

and Plasterers' International Union Local No. 56 of DuPage County, Illinois (hereinafter referred

to as "Local Union No. 56"), the Masons Contractors' Association of DuPage County, and the

individual trustees.  The Trust Agreement is dated October 1, 2001, as amended thereafter from

time to time.  The trust is managed from an office located in Carol Stream, DuPage County,

Illinois.

2.      The Pension Fund is a trust established pursuant to the Trust Agreement and

Declaration of Trust entered into by and between Local Union No. 56, the Mason Contractors'

Association of DuPage County, and the individual trustees.  The Trust Agreement is dated July

1, 1976 as amended thereafter from time to time.  The trust is managed from an office located in

Carol Stream, DuPage County, Illinois.

3.      The Welfare Fund Trustees, Richard Rasmussen, Richard Lauber, Richard Porter,

David Sabo, Timothy Aikens, Doug Johnston, and Michael Hooper, and their successors are the

trustees of the Welfare Fund, and as such are fiduciaries of the Welfare Fund within the meaning

Section 3(21)(A) of the Employee Retirement Income Security Act of 1974 (29 U.S.C. §1002

(21)(A). As trustees, the Welfare Fund Trustees are authorized by the express terms of the Trust

Agreement to bring this lawsuit.

4.    The Pension Fund Trustees and their successors are the trustees of the Pension

Fund, and as such are fiduciaries of the Pension Fund within the meaning Section 3(21)(A) of the

Employee Retirement Income Security Act of 1974 (29 U.S.C. §1002 (21)(A). As trustees, the

Pension Fund Trustees are authorized by the express terms of the Trust Agreement to bring this

lawsuit.

5.    D.J.M. Construction, Inc. ("DJM") is an Illinois corporation which, on

information and belief, is located at, and doing business from, 13162 West 159th Street, Homer

Glen, Illinois, and is an employer and party in interest in an industry affecting commerce, as

defined within 29 U.S.C. §1002 (5), (11), (12) and (14) and the Labor Management Relations

Act of 1947 as amended, 29 U.S.C. §151, *et seq*.

**Jurisdiction and Venue**

6.    Plaintiffs' claims arise under and pursuant to Sections 502 and 515 of the

Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §1132, and 29 U.S.C. §1145,

respectively.

7.    This Court has jurisdiction over this action pursuant to ERISA Section 502(e), 29

U.S.C. §1132(e), and venue lies in this District because this is the District in which the

Defendant breached its obligations under the Agreement.

**Claim under 29 U.S.C. §1132(a) and 29 U.S.C. §1145**

8.    Local Union No. 56 is a labor organization which represents employees in an

industry affecting commerce as the same is defined in the Labor Management Relations Act of 1947 as amended.

9.     The Welfare Fund is an employee benefit plan within the meaning of 29 U.S.C. §§1002(1), (3), (21) and §1132.  The Welfare Fund also is a trust created and existing in accordance with the provisions of 29 U.S.C. §186(c) and is commonly referred to as a jointly administered multi-employer welfare fund.

10.     The Welfare Fund was established for the purpose of providing health and welfare benefits for employees (and their dependents) of employers that entered into a Collective Bargaining Agreement with Illinois District Council No. 1 of the International Union of Bricklayers and Allied Craftsmen, which includes Local Union No. 56.  A copy of the Collective Bargaining Agreement is attached hereto as Exhibit A, and incorporated by reference herein.

11.     The Pension Fund is an employee benefit plan within the meaning of 29 U.S.C. §§1002(1), (2)(A), (3) and §1132.  The Pension Fund also is a trust created and existing in accordance with the provisions of 29 U.S.C. §186(c) and is commonly referred to as a jointly administered multi-employer pension fund.

12.     The Pension Fund was established for the purpose of providing pension benefits for employees (and their dependents) of employers that entered into a Collective Bargaining Agreement with Local Union No. 56.

13.     DJM entered into a Memorandum of Understanding with Illinois District Council No. 1 of the International Union of Bricklayers and Allied Craftsmen, of which Local Union No. 56 is a part, whereby the Defendant agreed to abide by the terms of the Collective Bargaining Agreement and amendments thereto and make the contributions to the Funds specified therein. A copy of the Memorandum of Understanding is attached hereto as Exhibit B, and incorporated

by reference herein.

14.    Pursuant to the most recent Collective Bargaining Agreement, the Defendant was obligated to make timely payments to the Welfare Fund, the Pension Fund, and various other funds, in the amount specified for each employee covered by the Collective Bargaining Agreement. *See* Ex. A., §§7.4, 7.5, 8.2.

15.    DJM is bound by the terms of the Collective Bargaining Agreement and is obligated to the Plaintiffs in accordance therewith.

16.    Despite demands that DJM perform its contractual obligations with respect to making contributions to the Welfare Fund, the Pension Fund, and other payments required pursuant to Collective Bargaining Agreement, DJM has failed, neglected, omitted, and refused to file annual reports and to make contributions to the Welfare Fund.

17.    DJM has employed a varying number of individuals covered by the Collective Bargaining Agreement.

18.    From the employment by DJM of the individuals covered by the Collective Bargaining Agreement there is owed to Plaintiffs contributions to the Welfare Fund, Pension Fund and other required payments for July, 2004 to October, 2007 in the amount of $9,671.58.

19.    This amount was determined by an audit conducted by the Plaintiffs' auditors, Levinson, Simon & Sprung, P.C.  A copy of the audit is attached hereto as Exhibit C, and incorporated by reference herein.

20.    DJM continues to refuse to comply with the Collective Bargaining Agreement, Trust Agreement and the Memorandum of Understanding by failing, neglecting, omitting, and refusing to make the contributions identified by Simon & Sprung, P.C. as due and owing.

21.    Section 515 of ERISA requires employers who are obligated to make

contributions pursuant to a collective bargaining agreement to do so in accordance with the agreement. 29 U.S.C. §1145.

22.     Section 502(a)(3) of ERISA expressly authorizes this court to redress violations of ERISA or the terms of the Plan, and to enforce any provision of ERISA, including the entry of equitable relief. 29 U.S.C. §1132 (a)(3).

23.     DJM's failure to make contributions to the Welfare and Pension Funds as set forth in the Collective Bargaining Agreement constitutes a violation of ERISA section 515, 29 U.S.C. §1145.

24.     DJM's failure to make contributions irreparably harms the Welfare Fund and Pension Fund because the Welfare and Pension Funds must provide pension credits and pay pension benefits to the Defendant's employees regardless of whether corresponding contributions are paid.

25.     Moreover, the Welfare and Pension Funds are irreparably harmed because they have lost the benefit of income they could have earned if the past due amounts had been received and invested on time.

26.     Further, the Pension and Welfare Funds have incurred additional administrative costs in detecting and collecting the Defendant's delinquencies.

27.     The Defendant's failure to cooperate and to make promised payments to the Welfare and Pension Funds causes substantial harm to the Welfare and Pension Funds.

28.     Conversely, the entry of an injunction or other equitable relief will not harm DJM because it is only being required to do what it is contractually and legally obligated to do.

29.     The public has a strong interest in the stability and financial integrity of fringe benefit funds and pension funds. 29 U.S.C. §1001 (a). Because the financial stability of fringe

benefit funds such as the Welfare Fund and pension funds such as the Pension Fund is a public concern, the entry of an injunction is in the public interest.

30.     DJM owes the Welfare and Pension Funds $967.16 for liquidated damages pursuant to 29 U.S.C. §1132 (g) (2) (C) (ii), and Section 8.16(B) of the Collective Bargaining Agreement.

31.     Pursuant to Section 8.16(F) of the Collective Bargaining Agreement, DJM also owes the Welfare and Pension Funds audit fees in the amount of $903.84.

32.     Pursuant to 29 U.S.C. §1132 (g) (2) (C) (ii), and Section 8.16(B) of the Collective Bargaining Agreement, the rate of interest determined by the Trustees of the Welfare and Pension Funds is 1.5% per month.  For the unpaid contributions set forth in paragraph 19 of this Complaint, DJM owes interest in the amount of $3926.00 as of May 16, 2008.

33.     Pursuant to 29 U.S.C. §1132 (g) (2) (D), DJM also owes the Welfare and Pension Funds reasonable attorneys fees and costs they have incurred in bringing this action.

WHEREFORE, the Plaintiffs respectfully request that this Court enter a judgment in their favor and against Defendant D.J.M. Construction, Inc.:

A.     Compelling the Defendant to pay to the Plaintiffs the $9,671.58 in unpaid contributions;

B.     Compelling the Defendant to pay $967.16 in liquidated damages;

C.     Compelling the Defendant to pay interest at the rate of 1.5% per month on delinquent contributions to the Welfare and Pension Funds;

D.     Compelling the Defendant to pay $903.84 in audit fees;

E.     Ordering the Defendant to pay the Plaintiffs' reasonable attorneys' fees and costs of suit;

F.     Grant an injunction ordering Defendant to submit monthly contributions and reports owed to the Welfare and Pension Funds on a timely basis;

G.     Granting to these Plaintiffs such other and further relief as the Court determines is

just and proper.

Respectfully submitted,
PLAINTIFFS,


By:_____/s/ Joshua M. Bernstein_____
One of their attorneys

Arthur M. Holtzman
Paul Altman
Joshua M. Bernstein
PEDERSEN & HOUPT, P.C.
161 N. Clark St., Suite 3100
Chicago, IL  60601-3224
(312) 641-6888

08CV 2873 NF
JUDGE KENDALL
MAGISTRATE JUDGE DENLOW

# EXHIBIT A
# PART I



**THESE NOTICES DO NOT CONSTITUTE A PART OF THE JOINT AGREEMENT AND WORKING RULES CONTAINED IN THIS BOOKLET.**

## NOTICE

Employers are cautioned that they are responsible for complying with all applicable State and Federal wage and hour laws when implementing the provisions of this Joint Agreement.

## NOTICE

In accordance with Section 27.6 of this Joint Agreement, all refractory provisions are to be superseded by the International Union Refractory Agreement when it is negotiated. However, if an Employer is a party to both agreements, the Union is agreeable to refractory work being performed under the terms of either this Joint Agreement or under the terms of the International Union Refractory Agreement, at the Employer's option.

## NOTICE

Wage and Benefit contribution amounts for Association Contractors for the second and third years of this Joint Agreement are located on page ___.

Wage and Benefit contribution information for Independent Employers is located on page ___.

## NOTICE

Words such as "he," "his," "journeymen," and "foremen" are meant to refer to employees of both genders.

# TABLE OF CONTENTS

Page

Preamble ..................................................................1
Area Covered by This Agreement ..................................2
Effective Date and Duration ...............................................2
Union Security ...........................................................2
Bargaining Unit and Recognition .........................................4
Work Jurisdiction ...............................................................4
Work Week and Payment of Wages ....................................10
Wages and Fringe Benefit Fund Contributions ...............15
Benefit Funds ...........................................................21
Jurisdictional Disputes ......................................................29
Settlement of Disputes ......................................................29
No Strike/No Lockout .........................................................31
Subletting ...........................................................................32
Employees, Employers, Associations, and Unions.............32
Apprentices and Improvers.................................................35
Foremen ............................................................................41
Stewards.............................................................................43
Non-Discrimination .............................................................44
Safety .................................................................................45
Workers' Compensation ....................................................46
Drug and Alcohol Abuse Program .....................................46
Tools ...................................................................................52
Employment During Inclement Weather..............................52
Advertising .........................................................................53
Bonds .................................................................................53
Contract Enforcement.........................................................57
Work Rules .........................................................................61
Fire Brick ............................................................................63
Precast Concrete Work ......................................................67
Masonry Cleaning ..............................................................68
Most Favored Nations Clause ............................................69
Savings Clause...................................................................70

# JOINT AGREEMENT

This Joint Agreement (the "Agreement") is entered into between representatives of labor and management. The representative of labor is Illinois District Council No. 1 of the International Union of Bricklayers and Allied Craftworkers (the "District Council"), consisting of Illinois Bricklayers Local Unions Nos. 20, 21, 27, 56, and 74 (the District Council and these local unions being called collectively the "Unions" or each called singularly the "Union"). The management representatives are the Mason Contractors Association of Greater Chicago, the Builders Association, the Lake County Contractors Association, the Fox Valley Associated General Contractors, and the Contractors Association of Will and Grundy Counties (the "Associations"), by the Northern Illinois Mason Employers Council, their bargaining representative, acting in their own behalf and on behalf of their members whose names are set forth in Exhibit A, prepared separately but forming a part of this Agreement, and any such employer who may hereafter join an Association and give that Association its bargaining rights, including such employers who prior to joining an Association may have executed an individual Memorandum of Understanding with the Union, it being understood that upon becoming a member of any of the above Associations, such employers will be solely obligated to observe the terms of this Agreement and any such prior Memorandum of Understanding shall become null and void. The Association shall inform the Union of its acceptance of any employer not listed in Exhibit A as a member by providing written notice, accompanied by a copy of the employer's signed application for membership. Each such employer accepted by the Associations and not listed in Exhibit A will become bound to this Agreement as of the time such written notice is served on the Union by the Association and the employer complies with Section 24.5. (All employers will be called collectively the "Employers" or each called singularly the "Employer.")

The Employers and the Unions have a common and sympathetic interest in the Masonry Industry. Therefore, a working system and harmonious relationship between the Employers, the Unions, and the public is essential. Progress in the industry demands a mutuality of confidence between

1

the Employers and the Unions. All will benefit by close cooperation in adjusting any differences by rational, common-sense methods.

THEREFORE, the parties agree as follows:

# ARTICLE I
## AREA COVERED BY THIS AGREEMENT

1.1

Except as otherwise stated, this Agreement shall cover the geographical area of Cook County, Lake County, Will County, Grundy County (with the sole exception of the DuPont Plant located on the western edge of Grundy County), DuPage County, Kendall County, DeKalb County, Kane County, and McHenry County, State of Illinois, and such additional territory which the Unions or the District Council shall subsequently acquire by approval of the International Union of Bricklayers and Allied Craftworkers.

1.2

Employers whose bargaining rights are held only by the Builders Association shall be bound by the Joint Agreement only with respect to work performed in Cook, Lake, and DuPage Counties, State of Illinois.

# ARTICLE II
## EFFECTIVE DATE AND DURATION

2.1

This Agreement shall be effective from June 1, 2006, through and including May 31, 2009.

# ARTICLE III
## UNION SECURITY

3.1

It shall be a condition of employment that all employees of the Employer covered by this Agreement who are members of the Union in good standing on the effective date of this Agreement shall remain members in good standing and those

2

who are not members on the effective date of this Agreement shall, on the eighth day following the effective date of this Agreement, become and remain members in good standing in the Union. It shall also be a condition of employment that all employees covered by this Agreement and hired on or after its effective date, shall, on the eighth day following the beginning of such employment become and remain members in good standing in the Union.

### 3.2 Union Membership Status

Employees who do not become members of the Union as required above, or whose membership is terminated by the Union by reason of the failure of the employee to tender or pay initiation fees and periodic dues uniformly required as a condition of acquiring or retaining membership, shall not be continued in the employ of any Employer under this Agreement.

### 3.3 Dues Check-Off

The Employer shall deduct from the wages of each employee who has signed a check-off authorization conforming to federal law, and transmit monthly to the Union (or to any agencies designated by said Union for the collection of such money) the sum for each hour paid which the Union has specified, or specifies from time to time and so advises the Employer in writing, as the portion of each employee's dues subject to check-off, made payable to the Union, its International Union, or any other affiliate of its International Union, as designated from time to time by the Union. The sums transmitted shall be accompanied by a statement, in a form specified by the Union, reporting the name of each person whose dues are being paid and the number of hours each employee has been paid.

### 3.4 Indemnification

The Union agrees to indemnify and save harmless the Employer against any and all claims, demands, suits or other forms of liability that shall arise out of or by reason of the deduction and transmittal of dues pursuant to this Article III, provided, however, that the Union's total liability hereunder shall be limited to the amount of dues transmitted by the Employer to the Union pursuant to this Article during the time period covered by the claim.

3

# ARTICLE IV
# BARGAINING UNIT AND RECOGNITION

4.1

This Agreement shall apply to all work within the trade jurisdiction of the Union and performed by this craft. The bargaining unit shall consist of all bricklayers and allied craftworkers, stone masons and apprentices engaged in such occupational and craft work and the Employers recognize the Union as the sole and exclusive representative for all bricklayers and allied craftworkers, stone masons and apprentices employed by the Employers for the purposes of collective bargaining in respect to rates of pay, wages, hours of employment, or other conditions of employment. Only the employees in the bargaining unit shall perform the work covered by this Agreement.

4.2

For the purposes of the Health and Welfare, Local Pension, and Annuity Fund contributions only, the bargaining unit shall also include those persons in the employ of an Employer who are supervisors, as defined in the Labor-Management Relations Act, as amended, and who at one time were employee members of the bargaining unit herein on whose behalf contributions were required to be made to the Health and Welfare and Pension and Annuity Funds, unless written notice to the contrary signed by the supervisor is furnished to each of the applicable trust funds within 30 days of the commencement of employment as supervisor.

# ARTICLE V
# WORK JURISDICTION

The following comprises the work jurisdiction of the Union:

5.1     Bricklaying Masonry

A.      Bricklaying Masonry shall consist of the laying of bricks made from any material in, under, or upon any structure or form of work where bricks are used, whether in the ground, or over its surface, or beneath water; in commercial building, rolling mills, iron works, blast or smelter furnaces, stoves, lime

4

or brick kilns; in mines or fortifications; and all underground work, such as sewers, telegraph, electric, and telephone conduits. All fireproofing, blockarching, terra cotta cutting and setting, the laying of all tile, mineral-wool, cork blocks, glass masonry, aerated autoclave concrete or other lightweight masonry units or products, or any substitute for such material; post tensioning of masonry or other products or materials described in this Article, installation and repair of lintels, door and window frame setting, setting of shelf angles, grouting, and all uses of metal lath related to masonry or other products or materials described in this Article; the laying of all pipe sewers or water mains and the filling of all joints on the same when such sewers or conduits are of any vitreous material, burnt clay, or cement, or any substitute material used for the above purpose; the setting, pointing, and striking joints of cut stone and artificial stone, and setting, cutting, and trimming either with hand or power tools of fire brick, terra cotta, and hollow tile and the pointing up of all brick, stone, or terra cotta on new and old buildings. All brick paving and grouting.

B.   Bricklaying Masonry shall also consist of installations of all brick work and other refractory materials with reference to the installation of boilers, furnaces, and stoves, and their brick work, or refractory material repairs and replacements, and all other construction where firebrick or other refractory materials are used, including with the use of a hand dipper, and including all boiler baffles, made of tile or refractory materials; the installation and removal of scaffolding and bracing for repair and patchwork in coke battery ovens; all aspects of the operation of a gunite machine of any type or brand, including but not limited to the work of the operator and the work known as the nozzle end; the trimming of gunite material and the trimming of all other plastic and ram materials; the installation of all attachment devices through any method, whether welding, bolting, or otherwise, in all refractory applications. All plastic or poured refractory materials whenever used, including boiler baffles, shall be performed by and under the supervision of a bricklayer.

C.   Bricklaying Masonry shall also consist of the installation of nail on brickwork and of all panels fabricated with such chemical compounds as thiokols, epoxy resins, polyesters, etc., adaptable for use in the masonry industry.

5

D. Bricklaying Masonry shall also consist of the laying of all rip rap, rubble work, flagstone, pavers, and all other paving materials and units, with or without mortar, setting all cut stone, marble, slate, or stone work (meaning as to stone, any work manufactured from such foreign or domestic products as are specified and used in the interior or on the exterior of buildings, and customarily called "stone" in the trade).

E. Bricklaying Masonry shall also consist of cutting all shoddies, broken ashlar or random ashlar that is roughly dressed upon the beds and joints, and range ashlar not over ten inches in height; the dressing of all jambs, corners and ringstones that are roughly dressed upon the beds, joints, or reveals, and the cutting of a draft upon same for plumbing purposes only. This is to apply to all work on buildings, sewers, bridges, railroads, bulkheads, breakwater jetties, playgrounds, parks, landscaping and curbing, or other public works, and to all kinds of stone, particularly to the product of the locality where the work is being done, and the same shall be considered stone-masonry. Stone masons shall have the right to use all tools which they consider necessary in the performance of their work. The cutting, setting, and pointing of cement blocks and all artificial stone, or marble, either interior or exterior when set by the usual custom of the stone mason and marble setter. All cement that is used for backing up external walls, the building of party walls, columns, girders, beams, floors, stairs and arches, and all material substituted for the clay or natural stone products; the cutting, setting and pointing of all concrete prefabricated slabs, regardless of dimension size; and the setting and anchoring, regardless of type or method, of any precast concrete panels, prefabricated brick panels, and prefabricated stone panels; the installation of caulking and backing thereof where at least one of the surfaces is masonry, the laying and setting of conduit of either clay or concrete which carries either steam or water piping and the joints are of any plastic material, the installation of cork or other material used for insulation purposes when laid in asphalt or similar plaster material including the cutting and fitting thereof, and preparation and installation of accoustone and material of similar character. Whenever any of the foregoing requires welding, it shall be done by bricklayers, stone masons, and concrete product specialists.

6

The use by bricklayers of mechanical mortar spreaders and caulking guns with high bond epoxy mortars shall be allowed at the sole discretion of the Employer, as shall all other devices when approved by the Employer and the Union.

F. Leveling Off

Bricklaying Masonry shall also consist of the leveling off of all footing stone when done on the building site.

G. Cutting, Bedding and Setting

Bricklaying Masonry shall also consist of cutting of all window and door openings, joist holes, and other openings of any sort in any wall, floor, ceiling, roof, structure, or part of structure comprised of brick, block, stone, tile, or any other masonry product; bedding and setting of all iron plates, lintels, and grillage beams; and the setting of filter plates whether they be bedded, grouted, clamped, or caulked.

H. Bricklaying Masonry shall also consist of all work assignments in the pre-assembly and complete installation of all exterior and interior artificial and natural masonry products of any size or dimension whether set individually or in pre-assembled panels which may have metal or concrete backing, whether set with cement mortar, high strength adhesives, or secured by bolting or welding to plates set in all types of concrete or attached to steel frame structures, whether set by hand or with any type of mechanical systems, and whether part of a multipurpose, unistrut, or any other type of product or system. Pre-assembly work assignments shall include, but not be limited to, the preparations of steel frames or precast concrete back up panels, the drilling of holes, cutting, fitting, and fastening of artificial and natural masonry product units to steel frames or back up precast by bolts, clip anchors, pins, including any welding, as well as the complete application or installation of insulating, caulking, and/or waterproofing materials. Installation work assignments shall include, but not be limited to, unloading, selecting, or shaking out of artificial and natural masonry products for erection, hooking on, signaling, laying out, cutting, fitting, bedding, landing, setting, leveling, plumbing, aligning, anchoring, installation of any steel clips, relief or support angles, as well as the installation of metal grid or strut stone supports (including bolting and/or welding),

7

grouting, patching, cleaning, and installation of gaskets or packing and caulking. For those Employers which have historically performed work as described in this paragraph and have done so with composite crews of bricklayers and other employees, such composite crews may continue to be used in the same manner as previously but all such work shall be under the supervision of a bricklayer.

I. Foundations and Walls

All foundations and walls, whether of brick, block, stone, or any other masonry unit or product, shall be performed by and under the supervision of a bricklayer or mason.

J. Flashing

Any flashing that is installed in the wall, regardless of the type of material, is the work of the bricklayer.

K.   The use by bricklayers of temporary frames, templates, falsework, corner poles, and plumb lines may be used on all types of construction at the sole discretion of the Employer, said production aids to be installed by bricklayers.

L.  Welding

Bricklaying Masonry shall also consist of all welding, cutting, and grinding of any material within the work jurisdiction of Bricklaying Masonry. This shall include, but not be limited to, lintels, shelf irons, door and window frames, columns, girders, beams, plates, anchors, bracing of walls, preassembled panels, clips, support angles, and flashing. All such work shall be done by Bricklayers, Stone Masons, and Concrete Product Specialists.

M.   In addition, all assignments mutually agreed upon between the Employer and the Union as well as all other work assignments on any other building products or systems related to the scope and type of work covered by this Agreement which may be developed in the future that are determined by these parties to fall within the work jurisdiction of this Agreement.

8

5.2

The following is the jurisdiction of work of the classification of specialists known as Concrete Block Layers, which is within the work jurisdiction of the Union. This classification shall in no way be construed as to deny the bricklayer the right to do any or all of the same work. This classification shall include the cutting, laying, pointing, caulking, grouting, reinforcing (whether with rebar or otherwise), and cleaning of all concrete block units, or similar units or substitutes, regardless of the size, and the handling and application of the loose aggregate, and shall include all sewer work eight inches or over, composed of cement, clay, or substitute material. It shall include fabrication at the plant and setting on the job of all masonry components.

5.3

The following is the jurisdiction of work of the classification of specialists known as Sewer and Manhole bricklayers, which is within the work jurisdiction of the Union. This classification shall in no way be construed as to deny the bricklayer the right to do any or all of the same work. Sewer masonry shall consist of the building, including leveling, of manholes, catchbasins, cisterns, arches for sewers, septic tanks, and vaults for sewer or drain systems, either of brick, stone, concrete blocks and substitutes, and all sewer pipe or other pipe of eight inches or over in diameter, and the pointing, caulking, and pouring of pipe joints except of a metallic nature. Also the laying and setting of conduit of clay or concrete or any non-metallic pipe or conduit which carries steam, gas, water, or water pipes, cable, or wire.

5.4

The following is the jurisdiction of work of the classification of specialists known as Aerated Autoclave Concrete Installers, which is within the work jurisdiction of the Union. This classification shall in no way be construed as to deny the bricklayer the right to do any or all of the same work. This classification shall include the setting, laying, cutting, placement, rigging, and installation by any method of aerated autoclave concrete or similar units or substitutes, and the finishing of such.

9

### 5.5 Pointing, Caulking and Cleaning

The following is the jurisdiction of work of the classification of specialists known as Pointers, Caulkers, and Cleaners, which is within the work jurisdiction of the Union. This classification shall in no way be construed as to deny the bricklayer the right to do any or all of the same work. This classification shall include the pointing, caulking, and cleaning of all types of masonry, caulking of all window frames encased in masonry on brick, stone, or cement structures, including all grinding and cutting out on such work, and all sand blasting, steam cleaning, and gunite work; the pointing, cleaning, and weatherproofing of all buildings, grain elevators, and chimneys built of stone, brick or concrete; and all grinding and cutting out, sand blasting, and gunite work on same.

### 5.6

When an Employer working under the terms of this Joint Agreement performs interior marble or interior polished stone masonry work, the terms of Local 21's Marble Agreement shall apply. However, it is understood that whenever such an Employer assigns employees to marble masonry who normally work under the terms of this Joint Agreement, the Employer shall pay the marble mason's gross rate of pay to such employees less the fringe benefit contributions which shall be paid in accordance with the terms of this Joint Agreement.

## ARTICLE VI
## WORK WEEK AND PAYMENT OF WAGES

### 6.1

The work week, for pay purposes, shall commence at 12:00 A.M., on Monday and end at 11:59 P.M. Sunday. Quitting time shall be eight and one-half hours after the starting time. No job shall start earlier than 7:00 A.M., and no Union nor Employer shall be responsible for obtaining or paying premium pay if an employee reports for work earlier than 7:00 A.M.

10

6.2

Any employee reporting for work upon order, expressed or implied, of the Employer, and not put to work for any reason except weather conditions, fire, accident, or other unavoidable cause, shall receive two (2) hours' pay for lost time.

6.3

Employees shall be paid on the job before 4:00 P.M. on Wednesday of the week following the week in which the work was performed, except where a holiday is celebrated on a Monday of the week in which payment is made, in which case payment shall be made before 4:00 P.M. Thursday of the said week. All payroll checks issued must have the contractor's name, his office or home address, and telephone number printed thereon. A detachable stub recording social security taxes and other authorized deductions shall be attached to all pay checks.

6.4

Time checks payable at the office of the Employer shall be considered valid, provided the employee is allowed two hours for traveling time. That traveling time shall be added to the time check by the person issuing it. If the employee is not paid promptly upon his arrival at the office and is obliged to wait during working hours, he shall be allowed regular wages for such waiting time. When an employee is directed during the work day to go from one job site to another, he shall be paid for all reasonable time spent in such travel.

6.5

When an employee is discharged he shall be paid in full and also when he is laid off, if he demands it, except when the lay-off is caused by bad weather or joists high. When an employee quits of his own accord, he shall receive his pay on the next regular pay day.

6.6

If there is no work on a pay day due to inclement weather or some other reason, the contractor will make arrangements for the checks to be on the job before 11:00 A.M.

11

6.7

Should an employee fail to receive his wages on pay-day he shall immediately report same to the Union with all facts concerning the case. The Union is permitted to stop any job of an Employer for any non-payment by that Employer of wages or fringes and may publicize such stoppage or attempted stoppage of work (anything to the contrary in this Agreement notwithstanding), and no employee shall be requested or required to work on any job for the Employer until all wages and fringes have been paid in full. Thereafter, the employees shall be permitted to return to their jobs without discrimination or reprisal.

6.8

The normal work week shall consist of forty hours to be paid at the minimum wage rate. Time and one-half shall be paid for work performed in excess of forty hours in one week or in excess of eight hours in one day or on Saturday, except as provided in this section. No disciplinary action will be taken against any employee who refuses to work more than eight hours in one day or forty hours in one week or on a Saturday. Saturday may be used as a make-up day at the straight time rate of pay when work is lost during the regular work week due to inclement weather. First preference for Saturday make-up work will be given to the crews on the job. A contractor who is proven to have worked a Saturday make-up day for any reason other than inclement weather shall not be eligible to work Saturday make-up for the remaining term of the contract. If a Saturday is used as a holiday make-up day, it shall be paid at double-time. Hours worked more than eight on any Saturday shall be paid at the double-time rate of pay.

6.9

The Employer shall notify the Union not later than 4:00 P.M. on the preceding Friday if his employees are to perform any work on Saturday. In so notifying the Union, he shall furnish the Union with his name and location where the job is to be performed. If the Employer fails to notify the Union of intended Saturday work, the Union shall have the right to call for an immediate audit of the Employer's records at the Employer's expense.

12

6.10

No work shall be performed on Sunday or on any of the following six holidays or the day observed as such holiday: New Year's Day, Memorial Day, Fourth of July, Labor Day, Thanksgiving Day, and Christmas, without the permission of the Union. When such permission is granted, double-time shall be paid for the work performed on these days. No work shall be performed on Labor Day except in cases of dire emergency and with the consent of the President of the Union.

When a day other than the holiday is missed during a holiday week because of inclement weather, then Saturday may be scheduled and worked as a make-up day at straight time rates. In all other circumstances when work is scheduled and performed on a Saturday during a holiday week other than the holiday weeks including Labor Day and Memorial Day, double-time shall be paid. In any event, any work performed on the Saturdays before Labor Day or Memorial Day will be paid at the double-time rate. Work performed on the Saturday following Labor Day or Memorial Day shall be paid at time and a half except that if work is missed during the holiday weeks including Labor Day and Memorial Day because of inclement weather, such work on the Saturdays of those weeks will be paid at the straight time rate of pay to a total of 32 hours of work during the week and will be paid at time and one half for all additional hours.

6.11

Where one of the foregoing holidays falls on Sunday, it shall be observed on the following Monday. If federal legislation establishes national observance of any of the foregoing holidays on a day other than the calendar day regularly observed in the past or on a day which is substituted for such existing holiday, the nationally observed day shall be the holiday.

6.12

Employees are to leave the tool house at starting time and be back in the tool house at the start of lunch time; leave the tool house at end of lunch time and be in the tool house at quitting time when the building is six stories or under. In

13

buildings thirteen (13) stories in height or over, where elevator service is not maintained to carry bricklayers and masons to and from their work, consideration shall be given to bricklayers and masons working on higher stories and a reasonable time should be allowed them to and from the work. Where the tool house is located in the building, it shall not be above the third floor.

6.13

A ten minute break shall be given in the morning, commencing not earlier than two hours, nor later than three hours, after the start of the work day. For any job on which there is a ten (10) hour workday, there shall be an additional 10 minute break given after the eighth hour.

6.14

There shall be a 30 minute lunch period that will start at a time set by the Employer, which time will be no later than five hours after starting time. Employees shall be paid double-time if they work through lunch, providing the Union is notified of the employees having worked through lunch within two regular work days of that having occurred. Before filing a grievance, the Union shall notify the Employer of its claim.

6.15

Shift differentials -- 4:00 P.M. to 12 Midnight -- for hours worked on the afternoon shift there will be paid a premium rate of 5% above the regular rate of pay per hour; 12 Midnight to 8:00 A.M. -- for hours worked on the night shift there shall be paid a premium rate of 10% above the regular rate of pay per hour.

Day Shift--8:00 A.M. to 4:00 P.M.
Afternoon Shift--4:00 P.M. to 12 Midnight
Night Shift--12 Midnight to 8:00 A.M.

14

# ARTICLE VII
## WAGES AND FRINGE BENEFIT
## FUND CONTRIBUTIONS

**7.1**

The Local Unions comprising the District Council participate in and are affiliated with various fringe benefit funds. The parties to this Agreement may agree to provide for different fringe benefit fund contributions for work performed within the geographical jurisdiction of one Local Union and another. As set forth in this Article, the recipient and division of fringe benefit fund contributions to be paid for work performed under this Agreement will depend on the Local Union affiliation of the employee performing the work or on the location where the work was performed.

**7.2**

If an employee is a member of a Local Union that is a member of the District Council, that Local Union shall be the employee's "Home Local." If an employee has a Home Local, fringe benefit contributions on behalf of that employee shall be paid to the Depository Account, as provided in Section 8.14, for distribution to the fringe benefit funds with which the employee's Home Local is affiliated, or, if the employee has no Home Local, for distribution to the funds with which the Local Union within whose geographic jurisdiction the work was performed is affiliated.

**7.3**

The "Standard Payment" shall be the wages and fringe benefit fund contributions set forth in Section 7.4. The parties to this Agreement may, through side letters or other appropriate written instruments, mutually agree from time to time that the fringe benefit contributions as to one or more Local Unions will be different than the Standard Payment, with such side letters or other written instruments to be negotiated and executed only by duly appointed representatives of the District Council and the Northern Illinois Mason Employers Council. If the parties to this Agreement provide for fringe benefit contributions different than the Standard Payment, the contributions paid for work by a particular employee will be based on the formula for the employee's Home Local if he has

15

one. If the employee has no Home Local, contributions will be based on the formula for the Local Union within whose geographical jurisdiction the work was performed, except that the contributions for an employee without a Home Local whose employment is covered by a reciprocity agreement will be based on the Standard Payment.

Notwithstanding anything contained in the first paragraph of this Section 7.3 or any other provisions of this Agreement, the Standard Payment for those employees whose Home Local was Local 14 prior to its merger into Locals 21 and 74 on September 1, 2001, who have elected to continue to have contributions and allocations to the various retirement benefit funds treated in a manner similar to the treatment of such contributions and allocations before the merger, and who are identified on the Side Letter that is Exhibit B to this Agreement as "Local 14 Members," shall be different than the Standard Payment. For those individuals, there shall be no contribution to the Local Pension Fund, $1.50 per hour shall be the required contribution to the Bricklayers and Trowel Trades International Pension Fund, and the required contribution to the Annuity Fund will be the amount by which the total of the Standard Payments for other employees to the Local Pension Fund, the Annuity Fund, and the International Pension Fund exceeds $1.50. The portion of that required contribution to the Annuity Fund that will be subject to the premium rate as described in Section 8.4 shall be limited to the amount of the Standard Payment per hour to the Annuity Fund for other employees, with the remaining amount of the per hour contribution to the Annuity Fund being based solely on each hour worked.

16

A. The Standard Payment for work performed effective as of June 1, 2006 is as follows:

| | |
|---|---|
| Wage Rate | $34.85 |
| Health & Welfare Fund | $ 7.05 |
| Local Pension Fund | $ 4.52 |
| Bricklayers and Stone Masons of Illinois District Council No. 1, B.A.C. Annuity Trust Fund | $ 3.10 |
| International Pension Fund | $ 0.25 |
| District Council Training Center Fund | $ 0.20 |
| International Masonry Institute | $ 0.29 |
| Labor-Management Cooperation Committee | $ 0.10 |
| Illinois Masonry Institute Promotion Trust | $ 0.18 |
| Masonry Industry Advancement Fund | $ 0.06 |
| Chicagoland Construction Safety Council | $ 0.01 |

For Employers that are party to this Agreement by virtue of membership in the Contractors Association of Will and Grundy Counties, there shall be no contributions to the Masonry Industry Advancement Fund or the Chicagoland Construction Safety Council. Instead, such Employers shall contribute 6¢ per hour to the Will and Grundy Industry Advancement Trust and 1¢ per hour to the Three Rivers Construction Alliance.

B. An increase of $3.20 per hour shall become effective June 1, 2007. The Union shall allocate the increase among wages and existing fringe benefit funds. Any increase for Health and Welfare shall be in such amount as found necessary by actuarial study and as recommended by majority action of Fund trustees. There shall be no increase in the contribution to the International Pension Fund without the consent of the Northern Illinois Mason Employers Council.

C. An increase of $3.25 per hour shall become effective June 1, 2008. The Union shall allocate the increase among wages and existing fringe benefit funds. Any increase for Health and Welfare shall be in such amount as found necessary by actuarial study and as recommended by majority

17

action of Fund trustees. There shall be no increase in the contribution to the International Pension Fund without the consent of the Northern Illinois Mason Employers Council.

7.5

The applicable Local Pension Fund and Health and Welfare Fund shall be as follows:

A.   For BRICKLAYERS LOCAL NO. 20 (Lake County):

(1)   Local Pension Fund:
Lake County Brick and Stone Masons Pension Fund.

(2)   Health & Welfare Fund:
Lake County Brick and Stone Masons Welfare Fund.

B.   For BRICKLAYERS LOCAL NO. 21 (Cook County and the portion of Will and Grundy Counties lying east of I-55 together with all of I-55, including rights of way and inter-changes):

(1)   Local Pension Fund:
Bricklayers Local 21 Pension Fund.

(2)   Health & Welfare Fund:
Masonry Institute.

C.   For BRICKLAYERS LOCAL NO. 27 (DeKalb, Kane, Kendall, and McHenry Counties):

(1)   Local Pension Fund:
Fox Valley and Vicinity Construction Workers' Pension Fund.

(2)   Health & Welfare Fund:
Fox Valley and Vicinity Construction Workers' Welfare Fund.

18

D.  For BRICKLAYERS LOCAL NO. 56 (Northern DuPage County, meaning north of Butterfield Rd./Route 56):

(1)  Local Pension Fund:
Mason and Plasterers Pension Fund Local 56, DuPage County, Illinois.

(2)  Health & Welfare Fund:
Brick Masons Welfare Fund of DuPage County.

E.  For BRICKLAYERS LOCAL NO. 74 (Southern DuPage County, meaning south of Butterfield Rd./Route 56, and the portions of Will and Grundy Counties lying west of I-55):

(1)  Local Pension Fund:
Masons and Plasterers Pension Fund, Local Union No. 74 of DuPage County, Illinois.

(2)  Health & Welfare Fund:
Bricklayers and Allied Craftsmen Welfare Fund, Local Union No. 74 of DuPage County, Illinois.

7.6

When bricklayers work in areas of atomic radiation, which radiation is monitored by the Atomic Energy Commission, or in areas where radioactive materials are present, the bricklayer shall receive one dollar ($1.00) per hour over the minimum wage stipulated in this Agreement.

7.7

Double-time is to be paid for all "Hot Work," which is work done during the operation of, or during the presence of temperatures which are higher than those temperatures which would be present if units had cooled in and/or on boilers, tanks, feeders or spouts, burner blocks, checkers, repair crowns, arches, ports, bridge walls, or dog houses, and when heat is such that a man has to leave work or be relieved at intervals.

19

### 7.8 Composite Crews

For in-plant and precast installation work involving composite crews of Bricklayers and Boilermakers or Iron Workers, Bricklayer employees will be entitled to the most favorable show-up and premium pay provisions for such work.

### 7.9

For work performed within the jurisdiction of BRICK-LAYERS LOCAL NO. 56, wages on smoke stack and tall chimney work shall be fifty cents (50¢) per hour above the prevailing rate, wages on underground work shall be twenty-five cents (25¢) per hour above the prevailing rate, wages on work under compressed air shall be not less than $2.00 per hour above the prevailing rate, and "hazard" pay not provided for elsewhere in this Section shall be negotiated on the job site prior to the commencement of work.

### 7.10 Travel Allowance

When an employee is assigned by the Employer to work at a location more than 100 miles outside the outer border of the area covered by this Agreement as described in Article I, Section 1.1, the Employer shall provide reimbursement for one round trip airfare from Chicago or, at the option of the individual employee, shall pay the employee the equivalent of the then current government mileage allowance per mile, round trip, between the outer edge of the area described in Article I, Section 1.1 and the location of the project. The Employer shall also provide the employee with living accommodations at American Automobile Association approved lodging, not to exceed double occupancy, and shall also pay the employee, one week in advance, $25.00 living expenses per day, including Saturdays, Sundays, and holidays. At the employee's option, he may forego the living expenses and lodging and receive round trip mileage reimbursement each day at the then current government allowance per mile. For employees who receive the accommodations and living expenses, the Employer shall also pay for the cost of one round trip airfare per month between the job and Chicago, in lieu of payment for accommodations and living expenses for one Saturday and one Sunday for each month of employment.

20

# ARTICLE VIII
# BENEFIT FUNDS

## 8.1    Additional Employer Obligation

The Employer agrees to be bound by the Agreements and Declarations of Trust establishing the Trusts described in this Article, as well as any amendments thereto, and agrees to be bound by all actions taken by the Trustees of those Trusts, pursuant to those Agreements and Declarations of Trust, except that in the event of any conflict between the terms of an Agreement and Declaration of Trust and this Agreement, the terms of this Agreement shall control.  Notwithstanding any other provisions to the contrary in this Agreement or in such Agreements and Declarations of Trust, contributions shall be due and payable as provided in this Article.

## 8.2    Health and Welfare Contributions

The Employer shall contribute to the appropriate Health and Welfare Funds the amount specified in this Agreement per hour for work performed by all employees and supervisors covered by this Agreement.

## 8.3    Local Pension Contributions

The Employer shall contribute to the appropriate Local Pension Fund the amount specified in this Agreement per hour for work performed by all employees and supervisors covered by this Agreement.

## 8.4    Bricklayers and Stone Masons of Illinois District Council No. 1, B.A.C. Annuity Trust Fund Contributions

The Employer shall contribute to the Bricklayers and Stone Masons of Illinois District Council No. 1, B.A.C. Annuity Trust Fund ("Annuity Fund"), the amount specified in this Agreement per hour for work performed by all employees and supervisors covered by this Agreement, except to the extent this obligation is modified as to Apprentices and Improvers. Notwithstanding anything to the contrary in this Section 8.4 or elsewhere in this Agreement, contributions to the Annuity Fund shall include the premium rates included in the wages paid to employees. By way of example, if an employee works

21

forty hours at straight time and four hours at time-and-a-half during a given week, that employee will receive the equivalent of forty-six hours' pay and the Annuity Fund contribution on behalf of that employee for the week will also be the equivalent of forty-six hours. Nothing in this provision concerning contributions to the Annuity Fund will affect the manner in which contributions are determined or paid to any fringe benefit fund other than the Annuity Fund.

8.5    International Pension Fund Contributions

The Employer shall contribute to the Bricklayers and Trowel Trades International Pension Fund ("IPF") the amount specified in this Agreement per hour for work performed by all employees covered by this Agreement.

8.6    District Council Training Center Fund Contributions

The Employer shall contribute to the District Council Training Center Fund ("DCTC") the amount specified in this Agreement per hour for work performed by all employees covered by this Agreement.

The entire amount of DCTC contributions based on work performed by employees whose Home Local is Local 21 or employees who have no Home Local but performed the work for which the contribution is made within the geographic jurisdiction of Local 21 will go to the DCTC, but at least half of that amount will be allocated by the DCTC for the benefit of the Local 21 Apprenticeship and Training Program.

8.7    International Training and Promotion Fund Contributions

The Employer shall contribute to the International Masonry Institute ("IMI") the amount specified in this Agreement per hour for work performed by all employees covered by this Agreement.

8.8    Labor-Management Cooperation Committee Contributions

The Employer shall contribute to the Illinois District Council No. 1 and Mason Contractors Association of Greater Chicago LMCC Trust ("LMCC") the amount specified in this Agreement per hour for work performed by all employees covered by this Agreement.

22

### 8.9  Illinois Masonry Institute Promotion Trust Contributions

The Employer shall contribute to the Illinois Masonry Institute Promotion Trust (the "Local Promotion Trust") the amount specified in this Agreement per hour for work performed by all employees covered by this Agreement. The Local Promotion Trust shall be administered by five (5) Trustees, of which three (3) shall be appointed by the Mason Contractors Association of Greater Chicago, and two (2) shall be appointed by the Builders Association of Chicago. The Trustees shall be advised by five (5) persons appointed by the Union.

### 8.10  Masonry Industry Advancement Fund Contributions

The Employer shall contribute to the Masonry Industry Advancement Fund ("MIAF") the amount specified in this Agreement per hour for work performed by all employees covered by this Agreement.

### 8.11  Safety Council Contributions

The Employer shall contribute to the Chicagoland Construction Safety Council ("Safety Council") the amount specified in this Agreement per hour for work performed by all employees covered by this Agreement.

### 8.12  Will and Grundy Industry Advancement Trust Contributions

Each Employer that is party to this Agreement by virtue of membership in the Contractors Association of Will and Grundy Counties shall, in lieu of contributions to the MIAF, contribute to the Will and Grundy Industry Advancement Trust the amount specified in this Agreement per hour for work performed by all employees covered by this Agreement.

### 8.13  Three Rivers Construction Alliance Contributions

Each Employer that is party to this Agreement by virtue of membership in the Contractors Association of Will and Grundy Counties shall, in lieu of contributions to the Safety Council, contribute to the Three Rivers Construction Alliance the amount specified in this Agreement per hour for work performed by all employees covered by this Agreement.

### 8.14 Depository Account for Employer Contributions

A. The amounts contributed pursuant to this Article shall be remitted by the Employer to a depository account for employer contributions ("Depository Account") maintained at such banking institution as the parties may agree upon in writing from time to time ("Bank") as agent of the Employer for the sole purpose of receiving and distributing contributions to the appropriate funds. As soon as practical, the Employers shall make all payments on a single fringe benefit contribution report form prepared and provided by the Bricklayer Benefit Funds Office with one check. The Bank shall distribute the contributions in accordance with the terms of this Agreement based on the Standard Payment and instructions given by the Masonry Institute concerning the Home Local, if any, of each employee. The Bank shall have no obligation or responsibility for distributing funds other than based on the Standard Payment.

B. Upon receipt, the Bank shall immediately forward a copy of the Employer's remittance form to the Masonry Institute for processing. A fee not to exceed two percent (2%) of the contributions received shall be deducted by the Bank and forwarded to the Masonry Institute to cover the cost of its administrative and computer services, provided however, that the entire contribution required pursuant to this Agreement shall be deemed to have been paid by the Employer notwithstanding such deduction.

### 8.15 Union Cooperation

Inasmuch as it is anticipated that the existence and utilization of the trust funds described in this Article will result in increased masonry work and, therefore, in increased job opportunities for bricklayers, the Union agrees to cooperate in assuring that contributions required by this Article are in fact made by Employers bound by this Agreement.

### 8.16 Payment of Contributions and Delinquencies

A. Contributions must be received by the Bank on or before the twentieth (20) day of each month, covering all employment performed during the preceding month for which contributions are to be paid by the Employer.

24

B.   Any Employer failing to make prompt and timely payment of the contribution to the funds and entities identified in Article VIII, Sections 8.2 through 8.13 (together or individually, the "Funds") in accordance with this Agreement shall, in addition to the required hourly contributions, pay an additional amount equal to ten (10) percent on all amounts remaining unpaid as and for liquidated damages for failure to pay in accordance with this Agreement, it being understood and agreed that damages resulting from such late payments are substantial but are difficult if not impossible to ascertain and, in addition, pay an amount equal to one and one-half (1.5) percent per month interest on all amounts remaining unpaid, including amounts due as liquidated damages and as interest.

C.   If a delinquency continues uncured for forty-eight (48) hours after written notice of such delinquency is mailed or delivered to the delinquent Employer, the Employer shall be liable for any damages incurred by employees or their beneficiaries because of the loss of benefits to which the employee would have been entitled if the Employer had made the required contributions, and for all contributions, liquidated damages, and interest due, plus all reasonable legal fees incurred by or on behalf of the Funds in enforcing the payment obligation.

D.   It shall be considered a violation of this Agreement for an Employer to fail to pay or comply with any provisions of this Article or any rule or regulation made by the Trustees administering the Funds. If the Unions receive written notice from one or more of the Trustees of the Funds, designated by the Trustees for that purpose, that the Employer has failed to pay in full any sum due the Funds under this Article and that such failure has continued for forty-eight (48) hours after an Employer has received written notice thereof, the Union is permitted to stop any job of that Employer, and may publicize such stoppage or attempted stoppage of work, until all sums due from the Employer under this Article have been paid in full. This remedy shall be in addition to all other remedies available to the Unions and the Trustees, and may be exercised by the Unions, anything in this Agreement to the contrary notwithstanding. Such stoppage or attempted stoppage of work and the publicizing of such to collect contributions to the Funds shall not be considered a violation of this Agreement on the part of the Union.

25

E.    If employees are withdrawn from any job in order to collect contributions to the Funds, the Employer shall pay the employees affected by such stoppage of work for lost time up to 16 hours, provided the Union gives the Employer two (2) days' written notice of the intention to remove employees by certified mail or by hand delivery with a sworn statement of delivery.

F.    The Employer shall furnish to the Trustees, upon request, such information and reports as they may require in the performance of their duties. The Trustees, or any authorized agent of the Trustees, shall have the right at all reasonable times during business hours to enter upon the premises of the Employer and to examine and copy such books, records, papers, and reports of the Employer as may be necessary to permit the Trustee to determine whether the Employer is fully complying with the provisions regarding Employer contributions.  Any Employer found delinquent through regular or special audit ordered by the Trustees shall be charged the full cost of such audit.

G.    The Trustees are hereby given the power and the authority to institute whatever legal proceedings may be necessary to enforce compliance with the provisions of this Article. Legal fees incurred by the Trustees in enforcing compliance with this Article shall be charged to the delinquent Employer.

H.    The specified contributions shall accrue with respect to all hours worked within or outside the Union's geographical jurisdiction, except that when work is performed outside the Union's jurisdiction, but in a location where another welfare plan or pension plan is effective and the Employer makes contributions to that fund, the Employer shall not be required to make a double contribution; provided, however, that the primary duty to make payments for work performed within the jurisdiction of the Union shall be for all Employers to pay to the Funds the contributions provided for in this Agreement.

I.    The attorneys employed by each of the Funds shall provide quarterly reports to the Trustees of those Funds of collection efforts being made on behalf of those Funds.

26

**8.17 Reports to Union and Trustees**

A. To assist in the collection of the contributions required pursuant to this Agreement, all Employers shall furnish the following reports to the Trustees of the Funds, or to the Union as indicated:

(1) All Employers shall annually furnish to the Trustees of the Funds, on dates determined by the respective Trustees, a statement showing whether (1) the Employer is a corporation and the names of all officers and directors of said Employer; (2) if not a corporation, a certificate stating who are the constituent persons composing the Employer and their respective interest in the Employer.

(2) Each Employer shall furnish to the Depository Account, on a monthly basis, a remittance report listing the names of all employees covered by this Agreement employed by the Employer during the month which the remittance report is made. For months in which no such employees were employed, the remittance report of the Employer for that month shall so state. The reports required to be furnished pursuant to this section shall be received by the Bank on or before the twentieth (20th) day of each month.

(3) Each Employer shall furnish to the Union on a weekly basis a report listing the name and address of each job site where work covered by this Agreement was performed during the week for which the report is made and the name of the foreman employed on each job.

B. If any Employer fails to file the required reports provided for above, and such failure continues for seventy-two (72) hours after the Employer has received written notice thereof, the Union may stop any job of that Employer and/or withdraw the employees from such Employer's employment, and may publicize such stoppage or attempted stoppage of work, until all required reports have been provided, anything in this Agreement to the contrary notwithstanding.

C. Within 48 hours of starting any job or project that alone or in the aggregate has a contracted value of $50,000.00 or more, the Employer must notify the District

27

Council by email or facsimile of the starting date and location of the job or project. The Union shall notify any Employer of an alleged violation of this provision in writing. The Employer will be liable for a penalty of $150.00 for each job or project if the matter is settled before it is presented to the Joint Arbitration Board, and for a penalty of $500.00 for each job or project if the case is presented to the Joint Arbitration Board and the Joint Arbitration Board finds a violation to have occurred, with the Joint Arbitration Board to determine the recipient of all fines.

## 8.18   Joint Trusteeship of Local Industry Promotion Fund

A.   The Union desires that the Illinois Masonry Institute Promotion Trust Fund (the "Local Promotion Trust") be jointly trusteed, with an equal number of Trustees representing Employers and employees, and they contend that such joint trusteeship is lawful under Section 302(c) of the Taft-Hartley Act. The Employers are agreeable to such joint trusteeship, subject to certain limitations, but they contend that Section 302(c) prohibits employee representatives serving as Trustees on the Local Promotion Trust. Therefore, the parties agree that a jointly administered successor trust to the Local Promotion Trust shall be created, subject to the following limitations, and contributions required to be paid under this contract to the Local Promotion Trust shall be payable to the successor fund:

(1)   The joint trusteeship of industry promotion or advancement funds shall be determined to be lawful by a final judgment issued by any federal court.

(2)   The joint Boards of Trustees shall consist of five employer and five employee representatives, each of whom shall have an equal vote.

(3)   In the event that less than five Trustees on a side shall be in attendance at a meeting, the votes of each Trustee present on that side shall be increased proportionately, so that all of the Trustees on a side who are present at a meeting shall be entitled to collectively cast a total of five votes.

28

(4) Seven affirmative votes shall be required to adopt a resolution of the Board of Trustees. The successor trust funds shall not be used for the purpose of providing apprenticeship training.

B. If such a jointly administered successor local industry promotion fund is not implemented within 30 days after the issuance of a final federal court judgment as described above, then contributions pursuant to this contract to the Local Promotion Trust shall cease 30 days after notice of such termination is given by the Union to the Associations.

# ARTICLE IX
# JURISDICTIONAL DISPUTES

9.1

All questions of jurisdiction over work to be performed under this Agreement shall be resolved by a Joint Arbitration Board as described in Section 10.2 of this Agreement or, if the Joint Arbitration Board does not render a decision, the dispute may be referred to arbitration as described in Sections 10.3 through 10.6 of this Agreement. Neither the Joint Conference Board of the Construction Employers' Association and the Chicago and Cook County Building and Construction Trades Council nor any similar body shall have any authority to consider or resolve any questions of jurisdiction over work to be performed under this Agreement.

# ARTICLE X
# SETTLEMENT OF DISPUTES

10.1

Any dispute between an Employer and the Union that they cannot resolve shall be referred to the Joint Arbitration Board (the "JAB"). All grievances must be filed within ninety (90) days of the date of the occurrence giving rise to the grievance or of when the party reasonably should have known of the existence of the grievance. Grievances not raised within the ninety (90) days period shall be deemed waived and not subject to being processed under this procedure.

29

10.2

There shall be a JAB consisting of four (4) appointees from the District Council and four (4) appointees from the Associations. Any contractor that sits on the JAB as a management appointee must be a mason contractor that is a contributor to the various funds and must be signatory to a collective bargaining agreement with the District Council. Any Union appointee must also be a member of one of the District Council's locals. An attorney, who may be appointed by management or labor, may also sit on the JAB as an appointee of management or the Union. The Association appointees shall be designated by the Northern Illinois Mason Employers Council. A quorum of the JAB shall be two (2) appointees from the District Council and two (2) appointees from the Associations, but neither side shall cast more total ballots than the other. A decision shall require a majority vote and any such decision shall be binding on both parties.

10.3

If a dispute has been referred to the JAB and is either refused by the JAB or results in a tie vote by the JAB, either party may submit the dispute to binding arbitration by:

A. Informing the other party of such submission and requesting the American Arbitration Association (the "AAA") to submit a panel of nine (9) arbitrators, who are members of the National Academy of Arbitrators and who maintain an office in the greater Chicagoland area, available to hear and decide the issue. The party requesting such panel shall upon receipt of the nine (9) names, strike one (1) name from the list and submit the remaining eight (8) names to the other party, who shall strike one (1) additional name. The parties shall alternately strike names thereafter until one remains, who shall be the arbitrator.

B. The party requesting arbitration shall then assume the responsibility of procuring the services of the arbitrator in accordance with the procedures of the AAA. The arbitrator shall hear and decide the issue as soon as possible, and shall submit his Award in the case.

30

10.4

If no agreement on the selection of an arbitrator is reached within one (1) week after a panel is tendered by the AAA, the AAA shall designate an arbitrator.

10.5

Unless otherwise agreed to by the parties to the dispute, the arbitrator shall issue a ruling without written opinion within 48 hours after the dispute is submitted, and the arbitrator's decision and award in the case shall be final and binding upon the parties.

10.6

Except as modified by the foregoing time limitations, the arbitration shall be conducted pursuant to the AAA's Voluntary Labor Arbitration Rules, as amended. All expenses of the arbitration, except expenses of legal counsel, shall be borne equally by the contractor and Union which are parties to the dispute.

10.7

When any matter is in dispute and has been referred to conciliation or arbitration for adjustment, the provisions and conditions prevailing prior to the time such matter arose shall not be changed or abrogated. The JAB, or any arbitrator selected in accord with this Article, shall have full power to enforce this Agreement and may impose such awards, orders, damages, lost wage damages, fines, sanctions, and other remedies as the JAB or arbitrator deem appropriate.

## ARTICLE XI
## NO STRIKE/NO LOCKOUT

11.1

During the life of this Agreement, no party will order, maintain, sanction, or engage in any strike, lockout, stoppage of work, or boycott affecting any other party, except as is specifically provided for in this Agreement.

31

# ARTICLE XII
# SUBLETTING

### 12.1

It shall be the duty of all persons letting or subletting bricklaying or masonry contracts to ascertain that the contractor or subcontractor is reliable, financially responsible, and will comply with the provisions of this Agreement. All persons letting or subletting masonry shall assume the responsibility for all payments or contributions to the Funds if its contractor or subcontractor fails to make the required payments or contributions; provided, however, that the Union notifies the person letting or subletting masonry work, in writing, of any such delinquency within 90 days of the delinquency and provided also that to help assist the Union, the person letting or subletting masonry shall notify the Union of the contractor or subcontractor to whom the work was sublet and the name and location of the project.

### 12.2

Subcontractors shall not sublet any part of the bricklaying, masonry work or allied crafts, except the stone work, the hollow tile floor arches, the caulking and cleaning and pointing; provided, however, the caulking shall be sublet before the exterior walls are completed and to subcontractors who employ bricklayers for such work.

# ARTICLE XIII
# EMPLOYEES, EMPLOYERS,
# ASSOCIATIONS, AND UNIONS

### 13.1 Local Employment

For all work performed within the geographic jurisdiction of the District Council, at least 50% of the employees shall reside within the geographic jurisdiction of the District Council.

### 13.2 Bricklayer Qualifications

Bargaining unit employees covered by this Agreement can be required to work on the job only with qualified employees. All apprentices successfully completing the apprentice-

ship program shall be considered qualified. All other persons seeking employment under this Agreement shall be required to pass an examination to determine their qualifications. When hiring employees, the Employer shall give first consideration to qualified workers who have had prior experience with Employers covered by this Agreement and performing work within the area covered by this Agreement.

### 13.3  Examination by Doctor

No employee performing work under this Agreement shall be required to submit to any physical examination by a doctor before being hired by any Employer.

### 13.4  Retiree Employment

Employers may offer employment to bricklayers who are currently receiving retirement benefits from any Bricklayer Pension Fund. Such bricklayers who return to active employment shall be paid at the regular journeyman rate applicable to the work. Contributions to the applicable fringe benefit plans shall be made for all hours worked by each such bricklayer. To the extent permitted by the applicable Pension Plan, retirees returning to work under this program shall continue to receive their monthly retirement benefits.

### 13.5  Employees as Contractors

A.  No employee covered by this Agreement shall contract masonry work until he has registered as a mason contractor with the office of the Union.

B.  No employee who has registered as a mason contractor shall work for others until he has notified the office of the Union and relinquished his registration as a mason contractor.

C.  No employee, after relinquishing his registration as a mason contractor, shall contract for masonry work for a period of twelve (12) months.

33

### 13.6 Work by Contractors

No individual who is a sole owner of, or a partner in, an Employer business shall be permitted to work with the tools of the trade or otherwise to perform bargaining unit work. An individual who is an employee of an Employer corporation and is also an officer of that corporation, a shareholder in that corporation, or both (a "Corporate Official"), may perform bargaining unit work subject to all provisions of this Agreement provided that (i) the Employer corporation must report and pay on a minimum of 150 hours of work per month, 12 months a year, by each such Corporate Official, and provided further that (ii) each Employer corporation may designate one, but only one, such Corporate Official who will be permitted not to participate in, and not to have contributions made on his behalf to, the Health & Welfare Fund, Local Pension Fund, International Pension Fund, and Annuity Fund, or to participate in and have contributions made on his behalf to the Health & Welfare Fund but not the Local Pension Fund, International Pension Fund, and Annuity Fund. The Corporate Official so designated by the Employer corporation must inform the District Council and the Bricklayer Benefit Funds Office of the election in writing. The Corporate Official waives the right to future participation in those funds as long as he is employed by that Employer corporation; and the Employer corporation must confirm to the District Council, on a form to be provided by the District Council, that it has designated that individual as the only Corporate Official who will be permitted to exercise that option. A Corporate Official so designated who has elected not to participate in and have contributions made on his behalf to the Local Pension Fund, International Pension Fund, and Annuity Fund will be allowed one opportunity to reverse that election and to participate in and have contributions made on his behalf to the Local Pension Fund, International Pension Fund, and Annuity Fund by notifying the District Council and the Bricklayer Benefit Funds Office in writing. The decision to opt into such participation shall be irrevocable. For purposes of this provision, references to corporations shall be deemed to include LLCs; and if an individual's spouse is the sole owner of or a partner in an Employer business or is a shareholder and/or an officer in an Employer corporation, the individual shall be treated as though he were the sole owner, partner, shareholder, or officer himself.

34

Case 1:08-cv-02873 Document 11-2 Filed 05/16/2008 Page 39 of 39

Each Association shall furnish to the District Council written notice of the name, address, telephone number, date of membership, and location or locations at which it is employing bricklayers, if any, and the name of each member which assigns its bargaining rights to the Association, within 14 days of the date of said membership or assignment.

## 13.8 Liability of Employers and Union

The liability of the Employers, as members of the Associations or as subscribers to this Agreement for any breach of this Agreement shall be several and not joint, with each Employer being responsible only for the acts or actions of such individual Employer. The liability of the District Council and of the Local Unions which are members of the District Council shall be several and not joint, and the liability of the Unions shall be only that of Negotiating Agent, without liability for their individual members.

# ARTICLE XIV
# APPRENTICES AND IMPROVERS

## 14.1

In order to maintain a sufficient number of skilled mechanics, the necessity for employment of Apprentices is hereby recognized, and the employment and proper training for as many Apprentices as is reasonable and practicable shall be encouraged by all parties to this Agreement. To this end the Employers shall be required to employ a minimum number of Apprentices, in relation to Journeymen. Apprentices shall be under the complete control and jurisdiction of the Trustees of the District Council Training Center Fund. No Employer may hire an Apprentice who is obligated to work for another Employer.

## 14.2 Apprentice Training

The District Council Training Center ("DCTC") shall train apprentices adequately in safety and first aid.

35

08CV 2873 NF
JUDGE KENDALL
MAGISTRATE JUDGE DENLOW

# EXHIBIT A
# PART II

14.3 Wages of Apprentices

The wages of Apprentices shall be as follows:

50% of Journeyman's wage scale for 1st six months
60% of Journeyman's wage scale for 2nd six months
70% of Journeyman's wage scale for 3rd six months
80% of Journeyman's wage scale for 4th six months
90% of Journeyman's wage scale for 5th six months
95% of Journeyman's wage scale for 6th six months

Except for the Annuity Fund, Apprentices will participate in and have payments made on their behalf at the same rate as Journeymen to all Funds. Apprentices who performed work under a predecessor to this Agreement on or before May 31, 2006, for which contributions were or should have been made on their behalf to the Annuity Fund, will continue to participate in and have payments made on their behalf to the Annuity Fund at the same rate as Journeymen. Apprentices who did not perform such work on or before May 31, 2006, will not participate in or have payments made on their behalf to the Annuity Fund during the period they remain as Apprentices, but will begin to participate in and have contributions made on their behalf to the Annuity Fund when they become Journeymen.

14.4 Improvers

There will be an additional classification of employee designated "Improver." An Improver is an employee with skills and experience in the industry who has not attained Journeyman status, did not participate in the introductory apprenticeship courses and program, and has been determined by testing conducted under the auspices of the DCTC to possess a skill level of at least 60% of what would be expected of a Journeyman. Upon being employed by an Employer, an individual who may be considered eligible for Improver status shall be tested through the DCTC and assigned a percentage status based on demonstrated skills. If the individual does not attain at least 60% status, he shall not be eligible to work as an Improver but he may apply for participation in the apprenticeship program. If the individual is ranked at 60% status or higher, he may work for any Employer, subject to all other terms of this Agreement, and he

36

shall be paid the same wages and benefits as provided in Section 14.3 for Apprentices. As with Apprentices, Improvers who performed work under a predecessor to this Agreement on or before May 31, 2006, for which contributions were or should have been made on their behalf to the Annuity Fund, will continue to participate in and have payments made on their behalf to the Annuity Fund at the same rate as Journeymen. Improvers who did not perform such work on or before May 31, 2006, will not participate in or have payments made on their behalf to the Annuity Fund during the period they remain as Improvers, but will begin to participate in and have contributions made on their behalf to the Annuity Fund when they become Journeymen. The Improver will advance in status and pay grade in the same manner as an Apprentice and will have the same obligations as an Apprentice to participate in the training programs provided through the DCTC. The DCTC shall inform the Improver, the District Council, and the Improver's current Employer of any failure by the Improver to participate or make suitable progress in the training program, using the same criteria that would be used for an Apprentice. If the Improver does not correct the problem within what the DCTC finds to be a suitable time and in what the DCTC finds to be a suitable manner, the DCTC shall so notify the Improver, the District Council, and the Improver's current Employer and the Employer will then be required to terminate the Improver, who will not be eligible to work as an Improver for one year. Upon completion of the training program and completion of the required amount of work, the Improver shall attain Journeyman status in the same manner as an Apprentice.

14.5   Ratios

(i)   Where a sufficient number of qualified Apprentices are available to that Employer, each Employer shall employ a minimum of one Apprentice or Improver for each five Journeymen and a maximum of one Apprentice or Improver for each three Journeymen, except that on all residential work three stories or less with a maximum of 25 dwelling units per structure, the Employer may, at its sole option, employ up to two Apprentices or Improvers for each Journeyman.

37

For purposes of determining whether the Employer is within the required ratio range, employment of Apprentices or Improvers and Journeymen will be considered on a company-wide basis. It shall be a violation of this Agreement not to be within the required ratio range, and such violation shall subject the Employer to a fine. Upon receipt of written notice from the Union that it is not within the required ratio range, the Employer shall have one week to come into compliance and to inform the Union that it has done so. If the Employer fails to come into compliance and so notify the Union within one week, it shall immediately begin paying the fine. The fine shall be payable to the DCTC Fund and shall be in the amount of $500.00 per week until the Employer reaches the required ratio range, except that if the Employer fails to pay the fine upon being informed by the District Council of the obligation to do so and the District Council presents the matter to the Joint Arbitration Board, the Employer may be required to pay an additional amount.

(ii) No Employer is required to employ any Improvers. If the Employer does employ Improvers, it must employ at least one Apprentice for each two Improvers, as set forth in the following schedule:

| Number of Improvers | Required Number of Apprentices |
| --- | --- |
| 1 | 0 |
| 2 | 1 |
| 3 | 1 |
| 4 | 2 |
| 5 | 2 |
| 6 | 3 |
| 7 | 3 and so forth. |

Any violation of this ratio requirement shall subject the Employer to a fine. Upon being notified by the Union that it is in violation of this requirement, the Employer shall have one week to come into com-

38

it shall pay a fine to the DCTC Fund equal to the total wages and Fund contributions paid to and on behalf of the number of Improvers employed above the permitted number, with the rate of pay based on the most highly paid Improver or Improvers above the required number, and the Employer will be required to pay such fine until it comes into compliance. If the Employer fails to pay the required fine upon being informed by the District Council of the obligation to do so and the District Council presents the matter to the Joint Arbitration Board, the Employer may be required to pay an additional amount.

(iii) The Employer's obligation to comply with the ratios described in this section, and its liability for fines for failing to comply with these ratios, will not apply if Apprentices are unavailable, but the Employer will be required to come into compliance when Apprentices become available. In addition, the obligation of all Employers to comply with the ratios shall be enforced on a fair and even basis and the Joint Arbitration Board shall consider all issues of availability of Apprentices, good faith efforts to comply with the ratio requirements, and fairness and evenhandedness of enforcement when considering grievances involving this provision.

14.6

New Signatories: Employers that have not previously been signatory to an agreement with the District Council will be exempted for a maximum of three years from the ratio requirements of Section 14.5 to the extent necessary to allow them to continue to employ, in the appropriate classification, employees who are in their employ at the time they first become signatory to a contract with the District Council; but all new hires must move the Employer closer to the required ratio range. Any abuse of this Section 14.6 will be subject to action by and order of the Joint Arbitration Board. The limited exemption provided for in this Section 14.6 shall not be

39

deemed to violate Article XXX or to give any other Employer any right pursuant to Article XXX.

14.7

Saw Work: In order to expose Apprentices and Improvers to all aspects of the trade, Apprentices and Improvers shall not operate a saw for more than eight (8) hours in any one work week except in unusual circumstances. No Apprentice or Improver shall be entitled to any back pay or other monetary remedy for any violation of this provision, this provision being enforced solely by a cease and desist order for the first violation and through fines for subsequent violations.

14.8

An apprentice category designated "Novice Trainee" will exist, with such category ceasing to exist effective May 31, 2009, unless the Parties agree otherwise. Employers may employ novice trainees to perform work covered by Article V. Each novice trainee must pay a $25.00 registration fee to the applicable Local Union and must produce the receipt for such payment while working as a novice trainee, and no Employer shall permit an individual to work as a novice trainee unless and until that individual presents the registration fee receipt to the Employer. Employment of each novice trainee is limited to a 200 hour probationary period, after which period the Employer must decide whether the novice trainee will be retained as an apprentice through the DCTC or be terminated. No individual may work as a novice trainee for more than 200 hours for any one Employer or a cumulative total of more than 200 hours for more than one Employer; and it shall be the responsibility of each Employer hiring an individual as a novice trainee to assure compliance with this requirement. The Employer must notify the District Council in writing when a novice trainee is either terminated or retained, and must do so within 48 hours of informing the novice trainee. Failure by the Employer to provide such written notice or otherwise abide by the requirements of this Section 14.8 may be grounds for the Joint Arbitration Board to impose an appropriate remedy, including barring the Employer from future employment of novice trainees. If the novice trainee is to be retained, it will be his or her responsibility to apply to the apprenticeship program, and such application will be treated

40

as would any application. The decision of the Employer to terminate a novice trainee during or at the end of the probationary period will be at the Employer's sole discretion and will not be subject to challenge through the procedures of Article X.

Novice trainees will be paid 45% of the minimum wage rate set for journeymen. No benefit fund contributions or other payments except wages will be paid on behalf of a novice trainee unless he or she is retained after the 200 hour probationary period, at which point the Employer must pay Health and Welfare and Annuity contributions retroactively for the probationary period; and thereafter all contributions and payments will be made on a prospective basis. The Employer recognizes that novice trainees will not have received the safety and first aid training provided by the DCTC, and must take proper steps to compensate for that lack of training.

An Employer may employ one novice trainee for the first ten or fewer journeymen in its employ. After the Employer uses an initial novice trainee, the Employer must abide by the ten to one ratio and at least one Apprentice must be included among the ten journeymen when available. The Local Union in whose area the work is being performed must approve application of the ratio for employment of more than one novice trainee. Employers may only employ novice trainees if they are current on all fringe benefit fund contributions, and no Employer may employ a novice trainee if there is a pending Joint Arbitration Board decision with which it has not complied.

## ARTICLE XV
## FOREMEN

15.1

There shall be a Foreman on all jobs on which four or more bricklayers or stone masons are employed, who shall have the sole authority to hire and discharge. The Foreman may work with the tools of the trade, at the contractor's discretion, up to and including jobs on which twelve bricklayers and stone masons (including the Foreman) are employed. The Foreman shall be a non-working Foreman on jobs on which more than twelve bricklayers and stone masons (including the Foreman) are employed.

41

15.2

Foreman shall receive not less than 10% per hour above the journeyman wage stipulated in this Agreement. There may be employed, at the discretion of the Employer, a bricklayer who assumes additional responsibilities, who may be employed as a Sub-Foreman at the minimum rate of 5% per hour over the stipulated journeymen wage in this Agreement; however the Sub-Foreman shall not have the right or authority to hire or discharge.

### 15.3 Foremen Duties

No person shall act as foreman unless he is a skilled and competent craftsman. It shall be the duty of each foreman to keep a complete record of all jobs under construction upon which he is employed or acting and notify the Union office when starting a job giving the location and the contractor's name, and also shall notify the Union office when the job is completed. All foremen are to be supplied with all plans pertaining to their work, and the bricklayers and stone masons are to take orders from no one on the job except the employing contractor's representatives.

Foremen shall act as safety men and have full authority to declare a job unsafe, and the steward or any employee on the job shall have the right to call unsafe conditions to the foreman's attention.

Hiring, Discharge or Discipline of Employees: It shall be the duty of the foreman to discharge or discipline bricklayers or stone masons only for legitimate and just reasons, and he shall pay particular attention to the working rules concerning the discharge and laying off of men, and arrange for their prompt payment at such time. The bricklayer foreman shall be in charge of the hiring and discharging of all bricklayers on the job.

Treatment of Employees: Foremen must treat men working under them in a proper and just manner and in compliance with the terms and provisions of this Agreement. Bricklayers or stone masons shall not lose time if compelled to wait for the building of a scaffold or for stocking the scaffold or floors with material. The Employers or their representa-

42

tives shall not be permitted to give any advance in wages to employees nor shall they be permitted to lend money to employees covered by this Agreement.

# ARTICLE XVI
# STEWARDS

16.1  Duties of Stewards

All stewards must be members of the Union in good standing. Their duties shall consist of examining all working dues books and cards, issued to bricklayers, stone masons, and apprentices at any time, in his judgment, it is necessary but as far as possible, without inconveniencing the Employer. The duties of the steward shall also be to check terms and conditions of work and starting dates of employment for new employees, and all workers employed on a job shall report to the steward any differences or disputes that may arise in connection with the work or any part of it, and the steward shall report such differences or disputes to the Union. Stewards shall call time for starting and quitting work, and shall be furnished with a key to the shed. The steward shall have a copy of the work rules at all times.

16.2  Appointment of Stewards

Appointment of Stewards:  In order to secure observance of the provisions of this Agreement, each job or building may have a steward who shall be appointed by the authorized representative of the Union. In addition to his work as an employee under the terms of this Agreement, the steward shall be permitted to perform during working hours such of his normal union duties as cannot be performed at other times. The Union agrees that such duties shall be performed as expeditiously as possible and the Employer agrees to allow the steward a reasonable amount of time for the performance of such duties. The steward shall receive the regular rate of pay for a bricklayer or stone mason. The steward shall be subject to the rules and decisions of the Joint Arbitration Board. He shall always, while at work, carry a copy of this Agreement and these Working Rules. It is understood and agreed that the steward's duties shall not include any matters relating to hiring, termination or discipline of employees.

43

Where an Employer (a) has been found to have engaged in a serious violation of the wage or fringe benefit fund contributions provisions of this Agreement by the Joint Arbitration Board or by an arbitrator, or (b) reports fewer hours worked under the Agreement than those hours actually worked on a job as determined by the Union, then the Union shall have the right to appoint and place a steward of its own choosing on then current jobs of that Employer for a period of the next six months and/or the duration of the job, at the discretion of the Union.

### 16.3 Discharge of Steward

If it becomes necessary to discharge or lay off any bricklayer or stone mason because of the completion of the work or otherwise, the worker appointed and acting as steward shall not be discharged or laid off, while other bricklayers or stone masons remain employed on the job. Nothing herein contained shall in any way restrict the right of an Employer to discharge a steward for cause. The Employer shall notify the authorized representative of the Union twenty-four hours prior to termination of a steward, except a discharge for just cause. If a steward is discharged for just cause, the authorized representative of the Union shall be notified immediately by the Employer.

### 16.4 Replacement of Steward

The Union reserves the right to replace any steward who has been found derelict in his duties. Any steward substituted for one replaced by the Union shall be subject to the rights and duties as set forth in this Agreement.

## ARTICLE XVII
## NON-DISCRIMINATION

### 17.1

No party to this Agreement shall discriminate against any employee or any Employer covered by this Agreement by reason of said person's race, color, religious affiliation, national origin, or any other basis prohibited by law. The provisions of this Agreement relating to Strikes and Lockouts and Settlement of Disputes shall apply to any charge made by any party of a violation of this provision.

44

# ARTICLE XVIII
## SAFETY

**18.1**

All laws as to safety regulations or requirements, whether city, state, or federal, shall be strictly observed by both Employer and employee.

**18.2**

All prevailing safety regulations shall apply on scaffolding constructed for members working on same within the jurisdiction of this Union.

**18.3**

When required, Safety (Hard) Hats shall be provided by the Employer. The Employer shall provide one new helmet-liner and/or sweatbands as required. The employee shall be responsible for issued equipment and to sign a personal note for the cost of replacement for said equipment. For lost or damaged issued equipment, the employee shall reimburse the Employer at cost.

**18.4**

Should a bricklayer be required by law to accompany any Safety Inspector, city, state or federal (O.S.H.A.) on a Safety Inspection on the job site, he shall do so with pay; however, the individual bricklayer shall be the Foreman or his designee and the Steward on the job shall be informed of any unsafe violations found pertaining to the masonry work.

**18.5**

Suitable covering shall be provided as protection for employees when work is going on overhead.

**18.6**

Where dry cutting machines are used to cut terra cotta, brick or brick tile, cement or cinder blocks, the Employer shall furnish a regulation mask to cover the operator's nose and mouth, and also furnish safety goggles. Where wet cutting machines are used the Employer shall furnish a pair of rubber gloves, rubber apron, and dry elevated platform. All dry cut-

45

ting machines used by bricklayers are to be furnished with some mechanical, electrical, or suction device, or other engineering controls, to draw and keep away all dust at all times from all bricklayers. All cutting machines shall be adequately grounded before being operated. Whenever furnished and required by the Employer, the employee shall wear a safety helmet. It is understood that all employees shall be required to comply with these safety provisions.

## ARTICLE XIX
## WORKERS' COMPENSATION

19.1

It shall be a condition of employment that all Employers shall carry all necessary insurance required by any applicable Workers' Compensation Law of the state and shall comply with all such laws. All Employers shall upon request furnish a copy of the certificate of insurance or compliance with any applicable Workers' Compensation Law to the Union and will supply to the Union a copy of any such cancellation at least ten (10) days prior to the effective date of said cancellation of such coverage to the Union.

19.2

Employees covered by this Joint Agreement are not permitted to work for any Employer who does not carry Workers' Compensation insurance.

19.3

All Employers shall elect to be bound and shall cover all employees represented by this Union under any existing Social Security Law or any Unemployment Compensation law and shall furnish to the Union the Social Security Tax Number of the Employer.

## ARTICLE XX
## DRUG AND ALCOHOL ABUSE PROGRAM

I.     Policy Statement

The parties recognize the problems created by drug and alcohol abuse and the need to develop prevention and

46

treatment programs. (Company Name), and the signatory unions seek to protect people and property, and to provide a safe working environment. The purpose of the following program is to establish and maintain a drug free, alcohol free, safe, health work environment for all of its employees.

II. Definitions

    a.    Company Premises - The term "Company Premises" as used in this policy includes all property, facilities, land, buildings, structures, automobiles, trucks and other vehicles owned, leased or used by the company. Construction job sites for which the company has responsibility are included.

    b.    Prohibited Items & Substances - Prohibited substances include illegal drugs (including controlled substances, look alike drugs and designer drugs), alcohol beverages, and drug paraphernalia in the possession of or being used by an employee on the job.

    c.    Employee - Individuals, who perform work for (Company Name), including, but not limited to, management, supervision, engineering, craft workers and clerical personnel.

    d.    Accident - Any event resulting in injury to a person or property to which an employee, or contractor/contractor's employee, contributed as a direct or indirect cause.

    e.    Incident - An event which has all the attributes of an accident, except that no harm was caused to person or property.

    f.    Reasonable Cause - Reasonable cause shall be defined as excessive tardiness, excessive absenteeism, and erratic behavior such as noticeable imbalance, incoherence, and disorientation.

47

III.    Confidentiality

    a.    All parties to this policy and program have only the interest of employees in mind, therefore, encourage any employee with a substance abuse problem to come forward and voluntarily accept our assistance in dealing with the illness. An employee assistance program will provide guidance and direction for you during your recovery period. If you volunteer for help, the company will make every reasonable effort to return you to work upon your recovery. The company will also take action to assure that your illness is handled in a confidential manner.

    b.    All actions taken under this policy and program will be confidential and disclosed only to those with a "need to know."

    c.    When a test is required, the specimen will be identified by a code number, not by name, to insure confidentiality of the donor. Each specimen container will be properly labeled and made tamper proof. The donor must witness this procedure.

    d.    Unless an initial positive result is confirmed as positive, it shall be deemed negative and reported by the laboratory as such.

    e.    The handling and transportation of such specimen will be properly documented through the strict chain of custody procedures.

IV.    Rules - Disciplinary Actions - Grievance Procedures

    1.    Rules - All employees must report to work in a physical condition or that will enable them to perform their jobs in a safe and efficient manner. Employees shall not:

        a.    Use, possess, dispense or receive prohibited substances on or at the job site; or

48

b. report to work with any measurable amount of prohibited substances in their systems.

2. Discipline - When the company has reasonable cause to believe an employee is under the influence of a prohibited substance, for reasons of safety, the employee may be suspended until test results are available. If no test results are received after three (3) working days, the employee, if available, shall be returned to work with back pay. If the test results prove negative, the employee shall be reinstated with back pay. In all other cases:

    a. Applicants testing positive for drug use will not be hired.

    b. Employees who have not voluntarily come forward, and who tests positive for drug use, will be terminated.

    c. Employees who refuse to cooperate with testing procedures will be terminated.

    d. Employees found in possession of drugs or drug paraphernalia will be terminated.

    e. Employees found selling or distributing drugs will be terminated.

    f. Employees found under the influence of alcohol while on duty, or while operating a company vehicle, will be subject to termination.

3. Prescription Drugs - Employees using prescription medication which may impair the performance of job duties, either mental or motor functions, must immediately inform their supervisors of such prescription drug use. For the safety of all employees, the company will consult with you and your physician to determine if a re-assignment of duties is necessary. The company will attempt to accommodate your needs by making any appro-

49

priate re-assignment. However, if a re-assign-
ment is not possible, you will be placed on tempo-
rary medical leave until released as fit for duty by
a prescribed physician.

4.  Grievance - All aspects of this policy and program
    shall be subject to the grievance procedure con-
    tained in the applicable collective bargaining
    agreement.

## V.  Drug/Alcohol Testing

The parties to this policy and program agree that under
certain circumstances, the company will find it necessary to
conduct drug and alcohol testing. While "random" testing is
not necessary for the proper operations of this policy and pro-
gram, it may be necessary to require testing under the follow-
ing conditions:

a.  A pre-employment drug and alcohol test may be
    administered to all applicants for employment.
    Employees recalled to work by an Employer, and
    employees referred to an Employer by the Union
    who are requested to be tested, shall be compen-
    sated at their regular hourly rate of pay for the
    time required in such testing;

b.  A test may be administered in the event a super-
    visor has a reasonable cause to believe that the
    employee has reported to work under the influ-
    ence, or is or has been under the influence while
    on the job; or has violated this drug policy. During
    the process of establishing reasonable cause for
    testing, the employee has the right to request his
    on-site representative to be present;

c.  Testing may be required if an employee is involved
    in a workplace accident/incident or if there is a
    workplace injury;

d.  Testing may be required as a part of a follow-up to
    counseling or rehabilitation for substance abuse,
    for up to a one (1) year period.

50

Each employee will be required to sign a consent and chain of custody form, assuring proper documentation and accuracy. If an employee refuses to sign a consent form authorizing the test, ongoing employment by the company will be terminated.

Drug testing will be conducted by an independent accredited laboratory (National Institute on Drug Abuse and/or College of American Pathology), and may consist of either blood or urine tests, or both as required. Blood tests will be utilized for post accident investigation only.

The company will bear the costs of all testing procedures.

VI.   Rehabilitation and Employee Assistance Program

Employees are encouraged to seek help for a drug or alcohol problem before it deteriorates into a disciplinary matter. If an employee voluntarily notifies supervision that he or she may have a substance abuse problem, the company will assist in locating a suitable employee assistance program for treatment, and will counsel the employee regarding medical benefits available under the company or union health and welfare/insurance program.

If treatment necessitates time away from work, the company shall provide for the employee an unpaid leave of absence for purposes of participation in an agreed upon treatment program. An employee who successfully completes a rehabilitation program shall be reinstated to his/her former employment status, if work for which he/she is qualified exists.

Employees returning to work after successfully completing the rehabilitation program will be subject to drug tests without prior notice for a period of one year. A positive test will then result in disciplinary action as previously outlined in this policy and program.

51

# ARTICLE XXI
# TOOLS

**21.1**

No Employer shall lease or rent equipment to employees. All violations should be reported to the Joint Arbitration Board for action.

**21.2**

Employees shall furnish all normal personal hand tools that are required in the installation of masonry work.

**21.3**

All mechanical or electrical tools or equipment, or requested special tools not normally required by a bricklayer to install masonry work, shall be provided by the Employer.

**21.4**

No bricklayer shall be permitted to spread mortar on the wall with any implement other than a trowel, a mechanical mortar spreader, or other International Union approved devices; nor shall he be permitted to lay brick or stone in any material placed on the wall by anyone not working under this Agreement.

# ARTICLE XXII
# EMPLOYMENT DURING INCLEMENT WEATHER

**22.1**

During inclement weather an effort shall be made to employ the greatest number of employees possible on a rotation basis.

**22.2**

Where severe weather or other conditions prevents exterior work, all men prevented from working shall be given interior work, if available. If the available interior work is insufficient to employ all men prevented from doing exterior work, the available interior work shall be distributed fairly among the men prevented from doing exterior work with the approval of the Steward and the Foreman.

52

# ARTICLE XXIII
# ADVERTISING

### 23.1

The contractor may advertise in the daily papers, but must give his correct name and address and no contractor shall advertise to pay more than the minimum rate of wages. No contractor shall advertise for more men than are required on the particular building or job.

### 23.2

When more than the minimum rate of wages is advertised or paid, no Employer shall make a reduction in the wages of the bricklayer or mason until the completion of the job. When an Employer increases or advertises wages above scale on any job, this rate shall become the prevailing wage for all employees of such Employer covered by this Agreement on that job and the said increase shall continue until the job is completed. Valid subsistence allowances paid by the Employer shall not be deemed to be wages within the meaning of this section.

# ARTICLE XXIV
# BONDS

### 24.1  Bond Obligation

Any Employer that is or became delinquent for sixty (60) days or more, regardless of whether it subsequently cured that delinquency, in paying any obligations under this Agreement, shall furnish a satisfactory surety company's bond to guarantee payment of all obligations under this Agreement. The same obligation to provide a bond shall apply to any Employer that became or becomes bound to a new agreement with the District Council on or after June 1, 2004. An Employer that, until granting its bargaining rights to one of the Associations, was party to an independent Memorandum of Understanding, will not incur an obligation to provide a bond because of its grant of bargaining rights to the Association. Any Employer that is required to post a bond shall maintain the bond as long as the Employer is party to a collective bargaining agreement with the District Council.

## 24.2 Bond Amount

The bond shall be in the amount of $5,000.00 if the Employer has two (2) employees or fewer working under this Agreement; in the amount of $15,000.00 if the Employer has three (3) to five (5) such employees; in the amount of $30,000.00 if the Employer has six (6) to ten (10) such employees; in the amount of $60,000.00 if the Employer has eleven (11) to twenty (20) such employees; in the amount of $90,000.00 if the Employer has twenty-one (21) to thirty (30) such employees; and shall increase $30,000.00 for each additional ten (10) employees. The determination of the number of employees working under the Agreement for purposes of setting the amount of the bond will be based on the largest number of such employees within the twelve month period preceding the time the obligation to provide the bond arose. If, after the obligation to provide the bond arises or after the Employer provides the bond, the number of employees working for the Employer under the Agreement increases to an amount that would have required a bond in a higher amount, the Employer shall be required to post a bond in that higher amount or to increase the size of its bond to that level. The Union may, at its sole discretion, accept a bond in a lesser amount than provided in this section or not require the Employer to increase the amount of an existing bond, and no such action by the Union as to one Employer but not another Employer will be deemed to violate the Most Favored Nations Clause of the Agreement.

## 24.3 Alternate Form of Security

The Union may, at its sole discretion, accept a cash bond, irrevocable letter of credit, or other security instrument which it deems proper, and if such an alternate security instrument is provided and accepted, all references in this Article and elsewhere in this Agreement to a "bond" shall be deemed to apply to such alternate security instrument.

## 24.4 Enforcement of Bond Obligation

Notwithstanding anything to the contrary elsewhere in this Agreement, the Union is not required to utilize the grievance or arbitration procedure if an Employer that may be required to post a payment bond fails to do so within ten days of the time the Union submits a written request to the

Employer to do so. The Union may, upon expiration of such ten days, seek immediate relief in any court of proper jurisdiction. If the Union utilizes this provision of the Agreement to obtain an order from a court requiring an Employer to furnish a payment bond, the Union shall be entitled to recover from that Employer all reasonable legal fees and costs incurred, and shall be entitled to recover such fees and costs as a part of the legal action without resorting to the grievance or arbitration procedure.

Notwithstanding anything to the contrary elsewhere in this Agreement, if an Employer that is required to post a payment bond fails to do so within ten days of the time the Union submits a written request to the Employer to do so, the Union may, at its sole discretion, withdraw the employees of the Employer or take other economic action, and may publicize its dispute with the Employer regarding the obligation to post a bond. The Union's rights to engage in such actions and to take other steps as described in this Section to obtain a bond are cumulative. No decision or action by the Union to use one or more methods of seeking to obtain a bond from one Employer but not from another Employer will be deemed to violate the Most Favored Nations Clause of the Agreement.

## 24.5   New Contracts

No new contract will take effect until the Employer provides the required bond. The President of the District Council will have the discretion to allow a contract to become effective before a bond is provided and the exercise of this discretion shall not be deemed to violate the Most Favored Nations Clause of this Agreement. All provisions of Article XXIV shall apply to bonds posted or required pursuant to this subsection except that if the President of the District Council has exercised his discretion to allow a contract to become effective before a bond is provided, then in addition to the enforcement procedures and remedies provided in Section 24.4, the Union may cancel the contract before the Employer has provided the required bond, which cancellation will be effective upon the Union giving the Employer written notice that it is exercising this right.

### 24.6 Additional Bond Obligation

If any party to this Agreement believes there is a reasonable possibility that obligations under this Agreement will go unpaid and will be lost if no action is taken to obtain a bond prior to an Employer being delinquent for sixty (60) days or more, and/or if a bond in a higher amount than provided for in Section 24.2 is not received, that party may, upon 72 hours written notice to such Employer, present the question to the Joint Arbitration Board ("JAB") as discussed in Article XII of this Agreement. The JAB will be required to convene and hear evidence presented by the party raising the issue, along with any evidence presented by or on behalf of the Employer in question. If the JAB determines there is a reasonable possibility that obligations under this Agreement will not be paid and will be lost in the absence of such action, it shall require the Employer to obtain a bond as discussed in Section 24.1, notwithstanding that no delinquency exists or that a delinquency has not existed for sixty (60) days and/or to post a bond in a higher amount than provided for in Section 24.2. In determining whether a bond and/or a bond in a higher amount should be required under these circumstances, the JAB cannot act in an arbitrary manner. Without limiting the right of the JAB to require an Employer to obtain a bond and/or to post a bond in a higher amount under the provisions set forth in this paragraph for other reasons, one factor the JAB may consider is that the Employer, or an owner or principal of the Employer, is or was associated or affiliated with an Employer that failed to satisfy obligations on a previous occasion. If the JAB rules an Employer should obtain a payment bond and/or post a bond in a higher amount pursuant to this section, the Employer must do so within ten days of receipt of written notice of such decision by the JAB and if the Employer fails to do so, the Union may then utilize the procedures set forth in Section 24.4.

### 24.7 Bond Form

The bond shall be in such form as the JAB may prescribe from time to time. The District Council will have the discretion to accept a bond in a different form, and the exercise of this discretion shall not be deemed to violate the Most Favored Nations Clause of this Agreement.

### 24.8   Pro Rata Distribution

If a bond is posted, delinquencies or unpaid obligations occur, recovery is sought against the bond, and the total obligations exceed the amount of the bond, payment shall be apportioned among all obligations on a pro rata basis, whereby each obligation will be paid at the same percentage.

# ARTICLE XXV
# CONTRACT ENFORCEMENT

### 25.1

A representative of the Union or the LMCC, acting in his official capacity as a representative, shall have reasonable access to all jobs over which the Employer exercises the control of entry.

### 25.2

Where job site security is enforced, the Employer agrees to make prior arrangements for Union or LMCC representatives to enter the job site.

### 25.3

The Union or the LMCC shall have the right to inspect the payroll records of the Employer for the purpose of determining whether the Employer is complying with the provisions of this Agreement relating to the rate and amount of wages, fringe benefits, and contributions to the Promotion Funds being paid to or on behalf of employees.  The Union or the LMCC shall have the right to make periodic examinations of all Employers who make it a practice to employ bricklayers on Saturdays.  The Employer shall make such books and records available at reasonable business times and hours to the representatives of a certified public accountant designated by the Union or the LMCC.  If an audit of such records reveals that the Employer has not violated the provisions contained in this Agreement, the cost of such audit shall be borne by the Union or the LMCC; if the audit reveals violations by the Employer, the cost of the audit shall be borne by the Employer, except in the case of an obvious technical error. The Union may stop any job in order to compel an Employer to make such books and records available and may publicize such stoppage or attempted stoppage of

work, and the employees who are affected by such stoppage of work shall be paid for lost time up to 16 hours provided that two days' notice of the intention to remove employees from a job is given to the Employer by the Union by registered or certified mail, hand delivery, or facsimile transmission. Such stoppage of work to compel an Employer to make his books and records available and the publicizing of such shall not be considered a violation of the Agreement on the part of the Union.

25.4

Each Local Union shall take whatever reasonable steps are necessary to insure that all Employers and all employees covered by this Agreement are in compliance with all working conditions contained in this Agreement, including payment of applicable wage rates and fringe benefit contributions for all hours worked by employees covered by this Agreement. There shall be formed a joint compliance committee ("JCC") to be composed of five members of the Northern Illinois Mason Employers Council and five members of the District Council. The District Council and the Employers Council shall further elect one alternate member each to serve when one of their respective members are unable to attend any duly constituted meeting. The JCC shall meet on or about the 15th day of each calendar quarter to review all information relative to employees receiving wage rates and fringe benefit contributions as provided in this Agreement, and to review job visitations and related actions taken by Local Unions during the preceding quarter. Special meetings of the JCC may be called by any two members of the committee at any time to review and to take necessary actions based upon all local union reports when the JCC ascertains that there are grounds for believing that an employer is paying wages and fringe benefit contributions for fewer hours than are actually worked. In discharging their responsibilities under this section, each Local Union shall:

A.    Within five (5) business days of signing a labor agreement, transmit to a designee of the Northern Illinois Mason Employers Council, two (2) photocopies of signature pages of all signed labor agreements between the District Council and employers located within the Local Union's geographic jurisdiction, showing the name and address of the sig-

natory Employer. An additional copy of each signature page shall be distributed to the Welfare and Pension Fund office and the Local Union business representative's office.

B. Regularly visit all job sites in the respective Local Union geographic jurisdictions at which they have been notified pursuant to this Agreement that bricklaying work is being performed, and visit any and all job sites reported by the designee of the Employers' Members on the JCC ("Employers' Designee"). Upon visiting a job site, the Local Union representative shall check the following items:

    (1)   Name of Employer.

    (2)   Whether Employer is signatory to this Agreement.

    (3)   Upon specific request by the JCC, endeavor to review with the foreman each employee's paycheck and compile a list of the bricklayers' names, hours worked, hourly rates paid and the total wages paid for the pay period.

    (4)   When deemed appropriate by the Local Union representative, advise a District Council Member of the JCC and the Employers' Designee by telephone by the end of the next business day and follow with his written report of said facts to both Committee representatives within three (3) business days.

C. When the JCC, at a regular quarterly meeting or a special meeting, determines that there are grounds for believing that an Employer is paying wages and fringe benefit contributions for fewer hours than are actually worked by employees, or otherwise failing to pay the applicable wage rates and fringe benefit contributions required by this Agreement, the Local Union representative shall:

    (1)   Within two (2) business days, ascertain the actual starting and quitting times of Employees on that job.

59

(2) Visit the job site for the next five (5) working days (Monday through Friday) once in the morning and once in the evening at quitting time and ascertain the names of employees working on that project for that work week, and the hours worked for that week. In addition, the Local Union representative shall visit the job site during the last work week of the same month and provide the same information as indicated to be ascertained during the first week's visits as shown above.

(3) Notify the Trustees of the Fringe Benefit Funds to which the Employer is obligated to contribute and request that they obtain an audit of the employer's books and records as provided in Section 8.16 of this Agreement.

(4) Each employee on a job site shall be presumptively deemed to have worked for all hours between the starting and quitting times, as determined by the Local Union representatives, except to the extent rebutted by each employee to the contrary, and, notwithstanding any provision of this Agreement to the contrary, the Employer shall pay wages and fringe benefit contributions based on that number of hours.

D. If a Local Union determines that wages or fringe benefits being paid by an Employer on any job are not in compliance with this Agreement, the Local Union shall take all lawful actions to obtain proper payment of wages and fringe benefits. Any Employer found by an arbitrator or court not to have paid all of the wages and fringe benefit contributions as required by this Agreement, in addition to paying the wages, contributions and liquidated damages due, shall pay the full cost, including reasonable attorneys fees and other expenses, of any investigation and proceedings before the Joint Arbitration Board or any arbitrator and any legal proceedings instituted by the Union or a Fringe Benefit Fund, to enforce this Agreement.

60

# ARTICLE XXVI
# WORK RULES

## 26.1 Signs

When not prohibited by the owner, all mason or brick-layer contractors shall display a printed sign in a prominent place on each job legible from the street, with their name, address, and telephone number printed thereon.

## 26.2 Vehicle Identification

All contractors will display company identification on all trucks and forklifts owned by the Employer.

## 26.3 Bids Shall Include Materials

Employers in submitting a bid or estimate to a contractor for any masonry work shall include all materials, necessary or required to complete the work, as purchased from or paid directly to the manufacturer, dealer or agent of the material supplier; and no Employer shall accept any contract with an owner or as a subcontractor or by the thousand or lump sum, of any character, without furnishing the material therefor.

## 26.4 Limitations of Work

There shall be no limitation placed on the amount of work to be performed by an employee during working hours.

## 26.5 Piecework

Piecework of any kind is prohibited.

## 26.6 Donation of Work

No work shall be donated by any member, unless it is for the member's immediate family, or another member. The immediate family shall mean: parents, children or wards, brothers, sisters. The Union is to be notified whenever this type of work is to take place.

## 26.7 Soliciting for Presents or Donations

No employee covered by the Joint Agreement shall solicit subscriptions for the purpose of making presents or donations to foremen or superintendents on any job.

61

### 26.8 Fire or Theft Losses

Contractors shall be required to pay a mason or bricklayer $200.00 for the loss of tools and $50.00 for the loss of clothes by fire or theft after quitting time when they have been locked in the shed provided for that purpose.

### 26.9 Use of Line

The contractor shall furnish mason lines on all jobs. The line on brickwork shall be put up by one course at a time, except in the case of obstructions. Corner poles, deadmen, temporary bucks, and any other instruments may be used on all residential construction and all types of exterior construction for one (1) story height or stories, which use therefor may increase production or improve the quality of the masonry installation. Bricklayers and stone masons shall install all said devices. A line shall be used on both sides of a wall twelve inches (12") or over.

### 26.10 Scaffold

Contractors shall provide a ladder for bricklayers and masons to get on and off scaffold. No scaffold shall be over five feet in height unless in case of obstruction, and all scaffolds to be not less than four feet wide with 18 inches between wall and material. Mortar boards shall be elevated to a height of approximately 18 inches.

### 26.11 Block Units

On all buildings where block units are used, two bricklayers or masons working as a team shall be used in placing blocks weighing 35 pounds or over.

### 26.12 Reporting for Work

Employees who do not intend to report for work at the starting time shall notify Employer. A failure to report or to notify the Employer shall be cause for discipline.

### 26.13 Change and Tool House

Every Employer, before the commencement of masonry operations on buildings of significant size or multi-story, shall provide on the job site a suitable shanty which shall be for the exclusive use of bricklayers and stone masons. The

shanty shall be conveniently located in buildings three stories or higher. Gang boxes shall be located every four floors. The shanty shall be adequately lighted and heated from the 15th of October to the 15th of April. The shanty shall be equipped with lock and keys and the Steward, in addition to the Foreman, shall have a key to the shanty and gang boxes. Sufficient windows or vents to insure proper ventilation must be maintained in each shed. The Employer shall be responsible for tools and work clothing lost in case of fire or in case of breaking and entering after working hours.

## 26.14 Drinking Water

The Employer or owner shall furnish clean and covered portable drinking water containers with spigot and sanitary drinking cups and sufficient ice to keep water cold.

## 26.15 Toilet Facilities

A toilet shall be provided on each job or, if not, employees shall be given time to go to the nearest public toilet.

## ARTICLE XXVII
## FIRE BRICK

### 27.1

Every Employer who engages in fire brick work shall be bound not only by the provisions of his Joint Agreement but also by the terms and provisions of the Fire Brick Working Code which is set forth herein and expressly made a part hereof.

### 27.2 Fire Brick Working Code

A. Back fill on all fire brick work shall be done by bricklayers only and at such time as the specified height is reached and after walls are completely level in courses.

B. All coke oven walls over eighteen (18) inches thick shall be saddled by two bricklayers. Line shall be raised on both sides at the same time.

C. When electrical grinding stone or carborundums are used, bricklayers not using the same shall leave that part

63

of the job until grinding operation is finished. No one bricklay-er shall be kept grinding continually and adequate rest peri-ods are given to the bricklayers engaged in this operation.

D. Scaffold height on coke oven walls shall not exceed three (3) feet in height. This does not apply to regen-erator walls.

E. It shall be the duty of any employee who may be working next to any employee who may be causing delay to help him out if it is for the benefit of all concerned.

F. Four feet shall be scaffold height in stoves and stacks. A solid scaffold must be installed every six feet in blast furnaces. Platform boards shall be two inches thick. A bench scaffold four feet in width must be installed at the height of three feet in blast furnaces. Last course of scaffold height shall be the tram course.

G. All ladders are to be staggered not straight up and down; adequate lighting is to be provided to insure safety when ascending or descending ladders. Stopping off place to be provided every twenty feet with a back rest. An emergency ladder to be suspended from the top in all blast furnaces. There shall be platforms placed inside and outside of tuyere holes for bricklayers to enter and leave blast furnaces.

H. When bricklayers are engaged in laying brick, the contractors shall provide said employees with respirators where dusty conditions prevail, shall provide safety goggles on work that impairs the eyes, and shall wet down all dusty places whenever possible. Contractors shall provide precau-tionary measures on jobs where gas exists so bricklayers may be warned in due time for their safety. When bricklayers are employed on excessive hot work, the contractor shall provide proper counter fatigue aids which shall meet the standards prescribed by the state medical board and shall provide prop-er gloves and protective materials to safeguard bricklayers when they are handling hot work. Contractors shall supply wooden shoes or facsimile when working on heated surfaces, and contractors shall be responsible for tools, shoes, and clothes of bricklayers which burn in the performance of their duties on said work. This shall apply also to jobs where

64

clothes, tools, and/or shoes are destroyed or damaged due to exceptional conditions.

I.    When bricklayers are working on blast furnaces, stoves, dust catchers, stacks or other fire brick jobs where scaffolds are used, the Employer shall have a fire extinguisher or extinguishers on the scaffold at all times.

J.    When working in blast furnace and its above mantel and high temperature cement is used the contractor shall furnish the bricklayer with safety glasses.

K.    No rack shall be permitted in a blast furnace.

L.    Bricklayers cannot start more than one course of bottom block at a time.  Each course shall be finished and ground before another is started.

M.    All bricklayers while working on carbon shall be allowed twenty minutes cleanup time.  This shall be at noon and quitting time, each day.  All carbon brick work shall be paid at twenty-five cents (25¢) per hour above the rate set forth in this Agreement.

N.    The contractor shall furnish kerosene or diesel oil for soaking tools in, each night while men are working on carbon.

O.    Contractor shall furnish cleaning cloths and detergents for bricklayers use when working on carbon.

P.    All caulking with asbestos rope to be the work of bricklayers.

Q.    A ten minute period for cleaning up shall be allowed at the end of a day's work when employed on fire brick work.  Adequate time shall be allotted to bricklayers for walking time to and from the plant's parking lot.

R.    When permission is granted for a twelve or more hour shift, an additional thirty minute lunch period shall be allowed at the expense of the Employer.  This lunch period shall be taken immediately after eight hours have been worked and every four (4) hours thereafter.

65

S.    Any member laid off shall be given one half hour to gather his tools when there is to be a layoff.

T.    Any job starting with overtime shall continue with overtime until completion of the job.

U.    When a man is laid off for lack of material, Employer shall see that the bricklayers that were laid off shall have been given first chance to come back to work.  It shall be the obligation of the steward and the business agent to see that this provision is carried out.

V.    All gunite work with refractory or insulating material shall be the work of employees covered by the Joint Agreement.

### 27.3  Shift Work

When work is carried on in two or more shifts, the second and third shifts shall receive eight hours' pay for seven and one-half  hours' work at the regular rate.  This rule shall also apply to any Employer who finds it necessary to work only a night shift.  No man shall work on more than one shift unless the man or men engaged for such work fail to report for work.  This does not apply to cupola lining, retort or conduit work.

### 27.4  Night Work

Eight hours shall constitute a night's work, which shall commence at 4:00 P.M., when two gangs are employed, and when three gangs are employed, one shift may follow the other immediately, and in that way work may be continuous.  Shifts to work as follows: 8:00 A.M. to 4:00 P.M.; 4:00 P.M. to 12 Midnight; and 12 Midnight to 8:00 A.M.  When two or more shifts are employed or when only a night shift is worked, the lunch period shall be included in the working time.

### 27.5

Notwithstanding the provisions contained in this Agreement, double-time rate shall be paid for all fire brick and related work performed before 8:00 A.M. and after 4:30 P.M. from Monday through Friday, except as modified by mutual written agreement.  Double-time rate shall be paid for all fire

66

brick and related work performed on Saturdays, Sundays, or holidays.

27.6

All refractory provisions shall be superseded by the International Union Agreement when negotiated.

## ARTICLE XXVIII
## PRECAST CONCRETE WORK

28.1

The following rules shall apply to contractors whose primary business is the installation and/or erection of precast concrete:

A.    The Employer shall have the responsibility for notifying each employee of the work assignment, job location, and starting time for the next work day by 7:00 p.m., and will make a reasonable effort to do so.

B.    No make-up days unless requested by employees due to inclement weather for more than one consecutive day.

C.    Installation of B-5 braces shall be performed by a crew of two employees unless no other method is available.

D.    No panels shall be cut loose from a crane until adequate strapping is welded and bracing is secured.

E.    All Journeymen and Apprentice Precast Workers who are certified welders shall be paid 5% over the wage rate they would otherwise receive, but Journeymen and Apprentice Precast Workers who are not certified welders will receive the regular wage rate. Foremen shall receive 7% over the rate provided here for Journeymen Precast Workers who are certified welders.

F.    Only one Apprentice Precast Worker per five Journeymen Precast Workers can weld on a jobsite.

G.    All Journeymen and Apprentice Precast Workers with less than (3) three years experience in the erection of

precast must successfully complete the rigging and safety training class provided by the District Council Training Center.

H.    Unless the employees are notified at least one hour prior to starting time, any employee reporting for work shall receive no less than two (2) hours' pay. Any employee working two hours or more shall receive at least four (4) hours' pay. Any employee working four (4) hours or more shall receive at least eight (8) hours' pay. The Employer reserves the right to disperse employees to another jobsite.

I.    No more than one Apprentice Precast Worker can be employed on a crew of five Precast Workers.

J.    Employees will be paid for time spent traveling between a completed jobsite and the next jobsite.

K.    All composite crew jobs will use composite crews to assemble and tear down the crane.

# ARTICLE XXIX
# MASONRY CLEANING

29.1

Except for masonry cleaning performed by an Employer with its own employees on a structure that it has erected or on which it has performed restoration work, the cleaning of any type of masonry shall be performed only by an Employer that is a Certified Masonry Cleaning Contractor ("CMCC") as determined by the District Council.

29.2

Each CMCC shall notify the District Council on a form to be provided by the District Council and to be received by the District Council by facsimile transmission, mail, or personal delivery, or by telephone in accord with procedures to be set by the District Council if it would be impossible to provide written notice, at least 48 hours before the work is performed, each location at which the CMCC will be performing masonry cleaning.

29.3

Notwithstanding anything to the contrary in this Agreement, a CMCC performing masonry cleaning may treat Saturday and Sunday as regular work days and is not required to pay a premium rate for work on Saturday or Sunday except for work in excess of 40 hours in one week or in excess of eight hours in one day, may employ up to three Apprentices or Improvers for each Journeyman, and may utilize any number of Improvers and any number of Apprentices in filling whatever number of Apprentice and Improver positions are available to it.

29.4

Each Employer subletting such work shall identify, on form to be provided by the District Council, the name of each contractor to which masonry cleaning was sublet during the previous month, the location of each job where such work was sublet, and the dates of performance.

29.5

Any Employer that subcontracts work to a cleaning contractor that is signatory to an agreement with the District Council and also to an agreement with Pointers, Cleaners, and Caulkers Local 52 shall not be responsible, liable, or involved in any way with any dispute as to which craft employees are assigned to perform the cleaning work.

## ARTICLE XXX
## MOST FAVORED NATIONS CLAUSE

30.1

If during the term of this Agreement, the Union enters into a collective bargaining agreement with another construction industry employer or group of employers employing bricklayers, stone masons, and apprentices (with the exception of agreements with the Underground Contractors Association of Chicago, Independent Underground Contractors, or agreements covering in-plant maintenance work) which provides for wage rates or economic fringe benefits or work rules most favorable to such Employer than the corresponding provisions of this Agreement, the parties to this Agreement will meet

promptly to draft an amendment to this Agreement incorporating such more favorable provisions.

30.2

The provisions of Section 30.1 may, at the discretion of the District Council, be suspended for a period not to exceed six (6) months for any newly organized Employer, but only with respect to work for which that Employer has contracted before the effective date of its Memorandum of Understanding, and the exercise of this discretion shall not be deemed to violate Section 30.1.

30.3

References in Article XXIV and Section 30.2 to specified conduct not violating the Most Favored Nations Clause shall be deemed also to mean that such conduct does not constitute providing wage rates or economic fringe benefits or work rules most favorable to such Employer than the corresponding provisions of this Agreement.

## ARTICLE XXXI
## SAVINGS CLAUSE

31.1

Should any of the terms and conditions of this Agreement be found in violation of any federal or state law, based on final court decisions or rulings of authorized governmental agencies, then such terms and conditions shall become void and ineffective immediately on written notice to this effect from one party to the other, but all other provisions of this Agreement shall continue in full force and effect.

31.2

In the event there is a disagreement on the legal interpretation of said court decisions or rulings, the subject matter shall be promptly referred to the Joint Arbitration Board for final determination through legal counsel.

IN WITNESS WHEREOF, the Parties have executed this Agreement to be effective as of June 1, 2006.

ILLINOIS DISTRICT COUNCIL NO. 1 OF THE
INTERNATIONAL UNION OF BRICKLAYERS
AND ALLIED CRAFTWORKERS, AFL-CIO

By: _____
James Allen

By: _____
Joseph Gagliardo

NORTHERN ILLINOIS MASON EMPLOYERS COUNCIL

By: _____
Richard Lauber

By: _____
Richard Porter

71

# SECOND AND THIRD YEAR RATES
# FOR ASSOCIATION EMPLOYERS

A.   An increase of $3.20 per hour shall become effective June 1, 2007.  The Union shall allocate the increase among wages and existing fringe benefit funds. The Standard Payment for work performed effective as of June 1, 2007, to and inclusive of May 31, 2008:

| | |
|---|---|
| Wage Rate | $ _____ |
| Health & Welfare Fund | $ _____ |
| Local Pension Fund | $ _____ |
| Annuity Fund | $ _____ |
| International Pension Fund | $ _____ |
| District Council Training Center Fund | $ _____ |
| International Masonry Institute | $ _____ |
| Labor-Management Cooperation Committee | $ _____ |
| Illinois Masonry Institute Promotion Trust | $ _____ |
| Masonry Industry Advancement Fund | $ _____ |
| Chicagoland Construction Safety Council | $ _____ |

B.   An increase of $3.25 per hour shall become effective June 1, 2008.  The Union shall allocate the increase among wages and existing fringe benefit funds. The Standard Payment for work performed effective as of June 1, 2008, to and inclusive of May 31, 2009.

| | |
|---|---|
| Wage Rate | $ _____ |
| Health & Welfare Fund | $ _____ |
| Local Pension Fund | $ _____ |
| Annuity Fund | $ _____ |
| International Pension Fund | $ _____ |
| District Council Training Center Fund | $ _____ |
| International Masonry Institute | $ _____ |
| Labor-Management Cooperation Committee | $ _____ |
| Illinois Masonry Institute Promotion Trust | $ _____ |
| Masonry Industry Advancement Fund | $ _____ |
| Chicagoland Construction Safety Council | $ _____ |

72

# INDEPENDENTS

Pursuant to its authority under the standard Memorandum of Understanding between District Council No. 1 and Independent Employers (meaning those Employers that are not party to the Joint Agreement and Working Rules or some other Association Agreement), the following rate schedule for wages and contributions shall apply:

A.    The Standard Payment for work performed on or after June 1, 2006 to and inclusive of May 31, 2007:

| | |
|---|---|
| Wage Rate | $ 34.85 |
| Health & Welfare Fund | $ 7.05 |
| Local Pension Fund | $ 4.52 |
| Annuity Fund | $ 3.10 |
| International Pension Fund | $ .25 |
| District Council Training Center Fund | $ .22 |
| International Masonry Institute | $ .51 |
| Labor-Management Cooperation Committee | $ .10 |
| Chicagoland Construction Safety Council | $ .01 |

B.    An increase of $3.20 per hour shall become effective June 1, 2007. The Union shall allocate the increase among wages and existing fringe benefit funds. The Standard Payment for work performed effective as of June 1, 2007, to and inclusive of May 31, 2008:

| | |
|---|---|
| Wage Rate | $ _____ |
| Health & Welfare Fund | $ _____ |
| Local Pension Fund | $ _____ |
| Annuity Fund | $ _____ |
| International Pension Fund | $ _____ |
| District Council Training Center Fund | $ _____ |
| International Masonry Institute | $ _____ |
| Labor-Management Cooperation Committee | $ _____ |
| Chicagoland Construction Safety Council | $ _____ |

73

C. An increase of $3.25 per hour shall become effective June 1, 2008. The Union shall allocate the increase among wages and existing fringe benefit funds. The Standard Payment for work performed effective as of June 1, 2008, to and inclusive of May 31, 2009:

| | |
|---|---|
| Wage Rate | $ _____ |
| Health & Welfare Fund | $ _____ |
| Local Pension Fund | $ _____ |
| Annuity Fund | $ _____ |
| International Pension Fund | $ _____ |
| District Council Training Center Fund | $ _____ |
| International Masonry Institute | $ _____ |
| Labor-Management Cooperation Committee | $ _____ |
| Chicagoland Construction Safety Council | $ _____ |

08CV 2873 NF
JUDGE KENDALL
MAGISTRATE JUDGE DENLOW

# EXHIBIT B

# MEMORANDUM OF UNDERSTANDING

1"450

IT IS HEREBY STIPULATED AND AGREED by and between

Name of Contractor _D & M Const._

Address _RT 10 Box 286_

_Lockport, IL_

_60441_

Telephone _312 463 1941_

Please Indicate:
- ☑ Corporation
- ☐ Partnership
- ☐ Sole Owner
- ☐ Other - please specify

FEIN # _36-3496645_

herein called the "Employer," and ILLINOIS DISTRICT COUNCIL NO. 1 of the International Union of Bricklayers and Allied Craftsmen, consisting of Bricklayers Local Union Nos. 14, 20, 21, 27, 56 and 74, herein called the "District Council," as follows:

1. The Employer hereby recognizes the District Council as the sole and exclusive collective bargaining agent for all Bricklayers, Stone Masons and Apprentices employed by the Employer for the purpose of establishing rates of pay, wages, fringe benefit contributions, hours of employment and other terms and conditions of employment for such employees for work performed within the Counties of Cook, DeKalb, DuPage, Grundy, Kane, Kendall, McHenry, Lake and Will, Illinois.

2. For the period commencing June 9, 1986, the Employer agrees to be bound by the terms and conditions of employment covering the type of work and the locations where the work is performed as set forth in the Agreement or Agreements entered into between the District Council and one or more of the following Employer Associations (called "Association Agreements"): Mason Contractors Association of Greater Chicago, Builders Association of Chicago, Mason Contractors Association of Fox Valley, Lake County Contractors Development Association, Lake County Mason Contractors Association, DuPage County Mason Contractors Association, and South DuPage County Mason Contractors Association.

3. This Agreement shall remain in effect and shall be governed by Association Agreements entered into in the future and covering future time periods unless and until it has been terminated by either party giving written notice of termination to the other not less than 60 and not more than 90 days prior to the termination date of the applicable Association Agreement, in which event this Agreement shall terminate on the last day of the then applicable Association Agreement. In the event no such timely notice is given, this Agreement shall remain in effect until terminated in accordance with its terms.

4. The Employer agrees to pay the amounts of the contributions which it is bound to pay to the several fringe benefit funds described in the collective bargaining agreement and agrees to and is hereby bound by and considered to be a party to the Agreements and Declarations of Trust creating each of said trust funds, together with any restatements or amendments thereto which have been or may be adopted, as if it had been a party to and signed the original copies of the trust instruments. The Employer ratifies and confirms the appointment of each of the Employer Trustees, who shall, together with their successor Trustees designated in the manner provided in said Agreements and Declarations of Trust, and, where applicable, jointly with an equal number of trustees representing employees, carry out the terms and conditions of the trust instruments.

5. Notwithstanding any provision of this Agreement or any provision of any other prior Agreement to the contrary, the District Council shall have the right in its sole discretion, to direct that contributions to either the International Masonry Institute, the Illinois Masonry Institute Promotion Trust, Fox Valley Construction Industry Advancement Program, Lake County Brick and Stone Masons Promotion Trust, Masonry Advancement Council of DuPage County, or the Masonry Industry Advancement Fund, or to all or any such Funds, shall terminate and upon the receipt of written notice from the District Council to that effect, the amount of such fringe benefit contributions shall cease to be due to the applicable Fund and shall be added to the hourly wage scale otherwise payable hereunder to Bricklayers, Stone Masons and apprentices employed by the Employer, provided, however, that inasmuch as the total amount of wages and fringe benefit contributions which the Employer is obligated to pay shall remain unchanged, any such reallocation of contributions to wages shall not be deemed to result in a more favorable wage or economic fringe benefit rate for purposes of the "Most Favored Nation" provision of the Association collective bargaining agreement.

6. Any Agreement or Memorandum of Understanding previously executed by the parties is hereby superseded by this Memorandum of Understanding.

DATED this _15_ day of _March_, 198_8_

Employer _D & M Const._

By _David John_
DAVID JOHNSON

ILLINOIS DISTRICT COUNCIL NO. 1
of the INTERNATIONAL UNION OF
BRICKLAYERS AND ALLIED CRAFTSMEN

By _____

# EXHIBIT C

# Levinson Simon & Sprung, P.C.
## Certified Public Accountants

566 W. Lake St.
Suite 3 West
Chicago, IL  60661-1414
(312) 655-0037
Fax (312) 655-9145

December 11, 2007

Trustees Masons & Plasterers Local 56
Fringe Benefit Funds
371 S. Main Place
Carol Stream, IL 60188

Re:    DJM Construction, Inc.
       Case # 56-1007-96

Gentlemen:

In accordance with your instructions, we have performed certain agreed upon procedures to the payroll records presented for our inspection by the above mentioned employer.  The purpose of the inspection was to determine the accuracy of the employer's monthly contributions to the Masons & Plasterers Local 56 Fringe Benefit Funds for the period July 1, 2004 through October 31, 2007.  This agreed upon procedure engagement was performed in accordance with the standards established by the American Institute of Certified Public Accountants.  The sufficiency of these procedures is solely the responsibility of the Masons & Plasterers Local 56 Fringe Benefit Funds.

Attached hereto are yearly schedules showing the detail of the under-reported hours and computation of the amounts due to the Funds.  The findings consist of under-reported hours of individuals on payroll doing covered work. All individuals have been previously reported to the Funds.

Our examinations indicated that the employer owes the following amounts for the period audited, exclusive of interest and audit charges.

|                | Amount Due |
|----------------|-----------:|
| Annuity        | $  1,729.33 |
| Dues Check Off |     743.45 |
| D.C.T.C.       |     173.94 |
| IMI            |     273.55 |
| IPF            |     153.25 |
| LMCC           |      36.88 |
| Pension Fund   |   2,526.51 |
| Safety Fund    |       6.13 |
| Welfare Fund   |   4,028.55 |
| Total          | $  9,671.58 |

Trustees Masons & Plasterers Local 56
Fringe Benefit Funds
December 11, 2007
Page Two
Case # 56-1007-96

We were not engaged to, and did not; perform an examination, the objective of which would be the expression of an opinion on the accompanying report. Accordingly, we do not express such an opinion. Had we performed additional procedures, other matters might have come to our attention that would have been reported to you.

We shall be please to furnish any additional information desired and have attached our bill for services.

Very truly yours,

Levinson Simon & Sprung P.C.
Howard B. Levinson, CPA, MBA

HBL/grr

# Levinson Simon & Sprung, P.C.
## Summary Report
### Report Date: 12/11/2007

Masons & Plasterers Local 56
DJM CONSTRUCTION
    Case #: 56-1007-96
    Audit Period: 7/1/2004 thru 10/31/2007

Employees

| Benefit | Year | Amount | Totals |
|---|---|---|---|
| **Annuity** | 2005 | 803.00 | |
| | 2006 | 602.38 | |
| | 2007 | 323.95 | |
| | | | 1,729.33 |
| **D.C. Dues** | 2005 | 338.72 | |
| | 2006 | 256.34 | |
| | 2007 | 148.39 | |
| | | | 743.45 |
| **D.C.T.C.** | 2005 | 87.60 | |
| | 2006 | 63.35 | |
| | 2007 | 22.99 | |
| | | | 173.94 |
| **IMI** | 2005 | 125.56 | |
| | 2006 | 94.70 | |
| | 2007 | 53.30 | |
| | | | 273.55 |
| **I.P.F.** | 2005 | 73.00 | |
| | 2006 | 54.13 | |
| | 2007 | 26.13 | |
| | | | 153.25 |
| **LMCC** | 2005 | 14.60 | |
| | 2006 | 11.83 | |
| | 2007 | 10.45 | |
| | | | 36.88 |
| **Pension Fund** | 2005 | 1,173.84 | |
| | 2006 | 880.33 | |
| | 2007 | 472.34 | |
| | | | 2,526.51 |
| **Safety Fund** | 2005 | 2.92 | |
| | 2006 | 2.17 | |
| | 2007 | 1.05 | |
| | | | 6.13 |

# Levinson Simon & Sprung, P.C.
## Summary Report
### Report Date: 12/11/2007

Masons & Plasterers Local 56
DJM CONSTRUCTION
    Case #: 56-1007-96
    Audit Period: 7/1/2004 thru 10/31/2007

| Benefit | Year | Amount | Totals |
|---|---|---|---|
| **Welfare Fund** | 2005 | 1,883.40 | |
| | 2006 | 1,408.43 | |
| | 2007 | 736.73 | |
| | | | 4,028.55 |
| | | | 9,671.58 |

### Summary by Year

| | | |
|---|---|---|
| **Manager:** Reaney, Gianna | **2005** | 4,502.64 |
| **Auditor:** Gartz, Taylor | **2006** | 3,373.63 |
| | **2007** | 1,795.31 |
| | | 9,671.58 |

Page 3

Employees

# Levinson Simon & Sprung, P.C.
## Detail Report
### Report Date: 12/11/2007

Masons & Plasterers Local 56
DJM CONSTRUCTION
Case #: 56-1007-96
Contract: Masons & Plasterers Local 56                     Year: 2005

## Contributions

| Contributions | Total | JAN 2005 | FEB 2005 | MAR 2005 | APR 2005 | MAY 2005 | JUN 2005 | JUL 2005 | AUG 2005 | SEP 2005 | OCT 2005 | NOV 2005 | DEC 2005 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Annuity | 803.00 | - | - | - | - | - | - | - | 801.63 | - | - | 1.38 | - |
| D.C. Dues | 338.72 | - | - | - | - | - | - | - | 338.14 | - | - | .58 | - |
| D.C.T.C. | 87.60 | - | - | - | - | - | - | - | 87.45 | - | - | .15 | - |
| I.P.F. | 73.00 | - | - | - | - | - | - | - | 72.88 | - | - | .13 | - |
| IMI | 125.56 | - | - | - | - | - | - | - | 125.35 | - | - | .22 | - |
| LMCC | 14.60 | - | - | - | - | - | - | - | 14.58 | - | - | .03 | - |
| Pension Fund | 1,173.84 | - | - | - | - | - | - | - | 1,171.83 | - | - | 2.01 | - |
| Safety Fund | 2.92 | - | - | - | - | - | - | - | 2.92 | - | - | .01 | - |
| Welfare Fund | 1,883.40 | - | - | - | - | - | - | - | 1,880.18 | - | - | 3.23 | - |
| Totals | 4,502.64 | - | - | - | - | - | - | - | 4,494.93 | - | - | 7.71 | - |

## Contribution Rates

Contributions computed by Amount per Hour (Shaded areas indicate rate change)

| Contribution Rates | JAN 2005 | FEB 2005 | MAR 2005 | APR 2005 | MAY 2005 | JUN 2005 | JUL 2005 | AUG 2005 | SEP 2005 | OCT 2005 | NOV 2005 | DEC 2005 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Annuity | 2.5000 | | | | | 2.7500 | | | | | | |
| D.C. Dues | 1.1600 | | | | | | | | | | | |
| D.C.T.C. | .3000 | | | | | | | | | | | |
| I.P.F. | .2500 | | | | | | | | | | | |
| IMI | .4100 | | | | | | | | | | | |
| LMCC | | | | | | .4300 | | | | | | |
| Pension Fund | 3.5900 | | | | | 4.0200 | | | | | | |
| Safety Fund | .0100 | | | | | .0500 | | | | | | |
| Welfare Fund | 5.6600 | | | | | 6.6500 | | | | | | |
| Totals | 13.8700 | 13.8700 | 13.8700 | 13.8700 | 13.8700 | 15.4200 | 15.4200 | 15.4200 | 15.4200 | 15.4200 | 15.4200 | 15.4200 |

**Levinson Simon & Sprung, P.C.**
**Detail Report**
**Report Date: 12/11/2007**

Masons & Plasterers Local 56
DJM CONSTRUCTION
Case #: 56-1007-96     Year: 2005
Contract: Masons & Plasterers Local 56

Under/(Over) Reported Dollars Paid and Hours

| | | Total | JAN 2005 | FEB 2005 | MAR 2005 | APR 2005 | MAY 2005 | JUN 2005 | JUL 2005 | AUG 2005 | SEP 2005 | OCT 2005 | NOV 2005 | DEC 2005 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| *ANMAN, HUGH M. 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 | Dollars | - | - | - | - | - | - | - | - | - | - | - | - | - |
| | Hours | 71.500 | - | - | - | - | - | - | - | 71.500 | - | - | - | - |
| *COLEMAN, JAMES 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 | Dollars | - | - | - | - | - | - | - | - | - | - | - | - | - |
| | Hours | 59.000 | - | - | - | - | - | - | - | 59.000 | - | - | - | - |
| *CONRAD, BRUCE R. 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 | Dollars | - | - | - | - | - | - | - | - | - | - | - | - | - |
| | Hours | 64.500 | - | - | - | - | - | - | - | 64.500 | - | - | - | - |
| *KAVANAUGH, CHAR 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 | Dollars | - | - | - | - | - | - | - | - | - | - | - | - | - |
| | Hours | 97.000 | - | - | - | - | - | - | - | 96.500 | - | - | .500 | - |
| Total Dollars | | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Total Hours | | 292.000 | - | - | - | - | - | - | - | 291.500 | - | - | .500 | - |

Masons & Plasterers Local 56
DJM CONSTRUCTION

Case #: 56-1007-96
Contract: Masons & Plasterers Local 56

Year: 2006

**Levinson Simon & Sprung, P.C.**

**Detail Report**

**Report Date: 12/11/2007**

| Contributions | Total | JAN 2006 | FEB 2006 | MAR 2006 | APR 2006 | MAY 2006 | JUN 2006 | JUL 2006 | AUG 2006 | SEP 2006 | OCT 2006 | NOV 2006 | DEC 2006 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Annuity | 602.38 | 330.00 | - | - | 210.38 | - | 62.00 | - | - | - | - | - | |
| D.C. Dues | 256.34 | 139.20 | - | - | 88.74 | - | 28.40 | - | - | - | - | - | |
| D.C.T.C. | 63.35 | 36.00 | - | - | 22.95 | - | 4.40 | - | - | - | - | - | |
| I.P.F. | 54.13 | 30.00 | - | - | 19.13 | - | 5.00 | - | - | - | - | - | |
| IMI | 94.70 | 51.60 | - | - | 32.90 | - | 10.20 | - | - | - | - | - | |
| LMCC | 11.83 | 6.00 | - | - | 3.83 | - | 2.00 | - | - | - | - | - | |
| Pension Fund | 880.33 | 482.40 | - | - | 307.53 | - | 90.40 | - | - | - | - | - | |
| Safety Fund | 2.17 | 1.20 | - | - | .77 | - | .20 | - | - | - | - | - | |
| Welfare Fund | 1,408.43 | 774.00 | - | - | 493.43 | - | 141.00 | - | - | - | - | - | |
| **Totals** | **3,373.63** | **1,850.40** | **-** | **-** | **1,179.63** | **-** | **343.60** | **-** | **-** | **-** | **-** | **-** | |

**Contributions computed by Amount per Hour (Shaded areas indicate rate change)**

| Contribution Rates | JAN 2006 | FEB 2006 | MAR 2006 | APR 2006 | MAY 2006 | JUN 2006 | JUL 2006 | AUG 2006 | SEP 2006 | OCT 2006 | NOV 2006 | DEC 2006 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Annuity | 2.7500 | | | | | 3.1000 | | | | | | |
| D.C. Dues | 1.1600 | | | | | 1.4200 | | | | | | |
| D.C.T.C. | .3000 | | | | | .2200 | | | | | | |
| I.P.F. | .2500 | | | | | .2500 | | | | | | |
| IMI | .4300 | | | | | .5100 | | | | | | |
| LMCC | .0500 | | | | | .1000 | | | | | | |
| Pension Fund | 4.0200 | | | | | 4.5200 | | | | | | |
| Safety Fund | .0100 | | | | | | | | | | | |
| Welfare Fund | 6.4500 | | | | | 7.0500 | | | | | | |
| **Totals** | **15.4200** | **15.4200** | **15.4200** | **15.4200** | **15.4200** | **17.1800** | **17.1800** | **17.1800** | **17.1800** | **17.1800** | **17.1800** | **17.1800** |

**Levinson Simon & Sprung, P.C.**
**Detail Report**
**Report Date: 12/11/2007**

Page 6
Employees

Masons & Plasterers Local 56
DJM CONSTRUCTION
Case #: 56-1007-96          Year: 2006
Contract: Masons & Plasterers Local 56

Under(Over) Reported Dollars Paid and Hours

| | | Total | JAN 2006 | FEB 2006 | MAR 2006 | APR 2006 | MAY 2006 | JUN 2006 | JUL 2006 | AUG 2006 | SEP 2006 | OCT 2006 | NOV 2006 | DEC 2006 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| *ANAMAN, HUGH M. 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 | Dollars | - | - | - | - | - | - | - | - | - | - | - | - | - |
| | Hours | 40.000 | 40.000 | - | - | - | - | - | - | - | - | - | - | - |
| *BIBEAU, TOMAS W. 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 | Dollars | - | - | - | - | - | - | - | - | - | - | - | - | - |
| | Hours | 76.500 | - | - | - | 76.500 | - | - | - | - | - | - | - | - |
| *CONRAD, BRUCE R. 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 | Dollars | - | - | - | - | - | - | - | - | - | - | - | - | - |
| | Hours | 60.000 | - | 40.000 | - | - | - | 20.000 | - | - | - | - | - | - |
| *KAVANAUGH, CHAR 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 | Dollars | - | - | - | - | - | - | - | - | - | - | - | - | - |
| | Hours | 40.000 | - | 40.000 | - | - | - | - | - | - | - | - | - | - |
| Total Dollars | | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Total Hours | | 216.500 | 120.000 | - | - | 76.500 | - | 20.000 | - | - | - | - | - | - |

**Levinson Simon & Sprung, P.C.**
**Detail Report**
**Report Date: 12/11/2007**

Masons & Plasterers Local 56
DJM CONSTRUCTION

Case #: 56-1007-96          Year: 2007
Contract: Masons & Plasterers Local 56

### Contributions

| Contributions | Total | JAN 2007 | FEB 2007 | MAR 2007 | APR 2007 | MAY 2007 | JUN 2007 | JUL 2007 | AUG 2007 | SEP 2007 | OCT 2007 | NOV 2007 | DEC 2007 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Annuity | 323.95 | 322.40 | - | - | 1.55 | - | - | - | - | - | - | - | - |
| D.C. Dues | 148.39 | 147.68 | - | - | .71 | - | - | - | - | - | - | - | - |
| D.C.T.C. | 22.99 | 22.88 | - | - | .11 | - | - | - | - | - | - | - | - |
| I.P.F. | 26.13 | 26.00 | - | - | .13 | - | - | - | - | - | - | - | - |
| IMI | 53.30 | 53.04 | - | - | .26 | - | - | - | - | - | - | - | - |
| LMCC | 10.45 | 10.40 | - | - | .05 | - | - | - | - | - | - | - | - |
| Pension Fund | 472.34 | 470.08 | - | - | 2.26 | - | - | - | - | - | - | - | - |
| Safety Fund | 1.05 | 1.04 | - | - | .01 | - | - | - | - | - | - | - | - |
| Welfare Fund | 736.73 | 733.20 | - | - | 3.53 | - | - | - | - | - | - | - | - |
| **Totals** | 1,795.31 | 1,786.72 | - | - | 8.59 | - | - | - | - | - | - | - | - |

### Contributions computed by Amount per Hour (Shaded areas indicate rate change)

| Contribution Rates | JAN 2007 | FEB 2007 | MAR 2007 | APR 2007 | MAY 2007 | JUN 2007 | JUL 2007 | AUG 2007 | SEP 2007 | OCT 2007 | NOV 2007 | DEC 2007 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Annuity | 3.1000 | | | | | | | | | | | |
| D.C. Dues | 1.4200 | | | | | | | | | | | |
| D.C.T.C. | .2200 | | | | | | | | | | | |
| I.P.F. | .2500 | | | | | | | | | | | |
| IMI | .5100 | | | | | | | | | | | |
| LMCC | .1000 | | | | | | | | | | | |
| Pension Fund | 4.5200 | | | | | | | | | | | |
| Safety Fund | .0100 | | | | | | | | | | | |
| Welfare Fund | 7.0500 | | | | | | | | | | | |
| **Totals** | 17.1800 | 17.1800 | 17.1800 | 17.1800 | 17.1800 | | | | | | | |

# Levinson Simon & Sprung, P.C.
## Detail Report
### Report Date: 12/11/2007

Masons & Plasterers Local 56
DJM CONSTRUCTION
Case #: 56-1007-96
Contract: Masons & Plasterers Local 56

Year: 2007

**Under/(Over) Reported Dollars Paid and Hours**

| | | Total | JAN 2007 | FEB 2007 | MAR 2007 | APR 2007 | MAY 2007 | JUN 2007 | JUL 2007 | AUG 2007 | SEP 2007 | OCT 2007 | NOV 2007 | DEC 2007 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| * COLEMAN, MIKE 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 | Dollars | - | - | - | - | - | - | - | - | - | - | - | - | - |
| | Hours | .500 | - | - | - | .500 | - | - | - | - | - | - | - | - |
| * CONRAD, BRUCE R. 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 | Dollars | - | - | - | - | - | - | - | - | - | - | - | - | - |
| | Hours | 104.000 | 104.000 | - | - | - | - | - | - | - | - | - | - | - |
| Total Dollars | | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Total Hours | | 104.500 | 104.000 | - | - | .500 | - | - | - | - | - | - | - | - |